Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of PHILIP CONLEY, Respondent, for Compensation under the Workmen's Compensation Law, *v.* THE UPSON COMPANY, Employer, and THE TRAVELERS INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, July 7, 1921.

**Workmen's Compensation Law — injury to eye — when failure to give notice of injury as required by § 18 prejudicial — evidence insufficient to establish that permanent loss of eyesight resulted from injury.** °

The claimant in May, 1918, while at work on a pressing machine, received an injury to his eye by some shavings being thrown into it. He was sent to his employer's first aid room and received treatment and thereafter continued his work without giving notice of any serious trouble with his eye although he told the foreman the day following the accident that his eye was inflamed and sore. The eye became gradually worse and he lost the sight thereof in January, 1919, but did not call a physician until nearly a year after the accident.

*Held,* that the claim should have been dismissed, *first,* because the failure of the claimant to give notice of the injury as required by section 18 of

the Workmen's Compensation Law was prejudicial to the employer and the insurance carrier, and *second*, because there was no medical testimony tending to show that the permanent loss of eyesight could have resulted naturally and unavoidably from the injury.

John M. Kellogg, P. J., and Kiley, J., dissent.

Appeal by the defendants, The Upson Company and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 31st day of December, 1920.

*Benjamin C. Loder [E. C. Sherwood* and *William B. Davis* of counsel], for the appellants.

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General*, of counsel], for the respondents.

Woodward, J.:

The claimant, sometime in the month of May, 1918, while at work upon a pressing machine, had some shavings thrown into his left eye. These shavings were paper shavings, constituting a part of the materials, apparently, used in making beaver boards. The claimant was sent to the first-aid room maintained by the employer, where the eye was washed out with boracic acid, and he returned to his work, finished the day's employment, and continued for sometime thereafter, so far as the record shows making no complaint and giving no notice of any serious trouble with his eye. He told the foreman, the day following the accident, that it was inflamed and sore, but he continued to work, and did not indicate that it was anything of importance. He says that the next month after the accident he began to get hazy in his eyesight; that afterward it became worse, and in the month of January, 1919, eight months after the accident, the sight was completely gone. He had never consulted a physician, or asked the employer to furnish a physician, until after the eye had fully lost its sight, according to his own testimony. He says that he consulted a lawyer in January, but it was not until April, practically a full year after the accident, that he called a physician; so that this claimant, knowing that his eye was growing worse from month to month, is in the position of not having given the notice required by section 18 of the Work-

men's Compensation Law under conditions which were daily increasing the risks of the employer, if compensation was to be paid. Giving the claimant the benefit of a technical construction of the act, that the notice was not required until " within ten days after disability," because under section 18 of the act (as amd. by Laws of 1918, chap. 634), taking effect on May 13, 1918, the notice was required " within thirty days after the accident causing such injury," he says that this eye had totally lost its sight in January, 1919, and certainly he was called upon to give the notice at that time, if he was to come within the plain letter of the law. But if the employer and the insurance carrier were not to be prejudiced by the alleged serious consequences of this apparently trifling accident they were entitled to notice as soon as it became evident that the eye was growing worse; they had a right to have the claimant treated for the injury at a time when treatment was calculated to be of use in preventing further injury. Such notice as was given by the washing out of the eye at the first-aid station on the occasion of the accident was not notice that this eye was likely to become wholly useless within a period of eight months. It was notice of a trifling injury, such as the first-aid station was designed to provide for — nothing more, and the fact that the claimant went back to his work, continuing the same for a considerable period, making no complaint, justified the employer in concluding that the first aid had fulfilled its legitimate purpose and that there was no occasion for further action. The claimant alone knew of the serious difficulty, if it existed; good faith demanded that he should give notice at a time when notice would be of use; and the finding of the State Industrial Commission that the employer was not prejudiced by the failure to give the notice which the statute requires, because of the alleged knowledge of the employer and the furnishing of medical aid, is without support in the evidence. The only notice of an accident which came to the employer was such as to fully warrant the assumption that the injury was purely incidental and of no permanent effect, and the conceded conduct of the claimant was calculated to aid in this conclusion. His claim that he was afraid of losing his employment is not an excuse

for failure to give notice of a condition which is imposing a burden upon others.

There is no medical testimony in this case tending to show that the permanent loss of eyesight could have resulted naturally and unavoidably from this trifling injury. (See Workmen's Compensation Law, § 3, subd. 7, as amd. by Laws of 1917, chap. 705.) Indeed, there is no testimony in the case which excludes the theory that the loss of sight was not due to an entirely independent cause.

But if we assume that there is evidence upon which the award might have been based, in the first instance, there is a conclusive determination that the lack of notice was fatal to the claimant's right to compensation, and unless an inferior judicial tribunal may review its own determinations of law and fact the award now before us may not stand. Deputy Commissioner Lang held a hearing upon this same claim on the 15th day of October, 1919, handing down the following memorandum: " No date of accident fixed. No notice of accident to employer in accordance with provision of law. Claim for compensation denied. Case dismissed. If claimant, at any future time, shall be able to establish that there was notice given, case may be re-opened on his presentation of the fact. Case closed."

The claimant has not shown that there was a notice in accordance with the provisions of law. He has shown that there was some knowledge on the part of fellow-employees, who may have communicated the fact to the employer, that the claimant had suffered from paper shavings in his eye; that he had been given first aid, and resumed his work, making no further complaint for a period of several months, during which time, he now claims, he was growing progressively blind. It is to be noted that no award was made; the claim was denied; and we know of no provision of law by which a claim which has been denied upon a hearing can be reopened, except by an appeal in the manner provided by the statute.

Section 20 of the Workmen's Compensation Law (as amd. by Laws of 1919, chap. 629) provides the time and method of procuring a hearing upon claims, and that " within thirty days after a claim for compensation is submitted under this section, or such hearing closed, *shall make or deny* an award, determining

such claim for compensation, and file the same in the office of the Commission.  Immediately after such filing the Commission shall send to the parties a copy of the decision.  * * * The *decision* of the Commission shall be final as to all questions of fact, and, except as provided in section twenty-three, as to all questions of law."  All this has been complied with; the Commission gave notice of its decision to the parties, holding that the lack of notice was fatal to the making of an award, and section 23 (as amd. by Laws of 1917, chap. 705) provides that " an award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction, as against the State Fund *or between the parties*, unless reversed or modified on appeal therefrom as hereinafter provided."  There was never any appeal from the decision of the deputy commissioner, approved by the Commission in sending out notice of the disposition of the case, but the Commission, upon the suggestion of counsel to the Commission, has assumed to reverse its former decision and to reopen the case, contrary to the established jurisprudence of this State.  (*Stephens* v. *Santee,* 49 N. Y. 35, 39; *People ex rel. Chase* v. *Wemple,* 144 id. 478, 482; *United States* v. *Burchard,* 125 U. S. 176; *People ex rel. Cohen* v. *York,* 43 App. Div. 138; *Matter of Hyland* v. *Waldo,* 158 id. 654, 658; *Matter of Equitable Trust Co.* v. *Hamilton,* 226 N. Y. 241, 245.)  In *People ex rel. Chase* v. *Wemple* (*supra*) the court say:  " It is the general rule that officers of special and limited jurisdiction cannot sit in review of their own orders or vacate or annul them.  A justice of the peace cannot set aside or alter a judgment after he has entered it.  (*Stephens* v. *Santee,* 49 N. Y. 39.)  The nearest approach to an exception is in the case of an audit by a board of supervisors to which the learned counsel for the appellant calls our attention.  (*People ex rel. Hotchkiss* v. *Supervisors,* 65 N. Y. 225.)  That case explicitly concedes the general rule, and then goes upon the ground that the boards of supervisors are a local legislature and exercise *quasi* judicial powers only in a qualified sense.  I know of no other exception, and do not think we can graft upon the special and limited powers of the Comptroller when acting judicially the general powers which belong to courts of original jurisdiction."  (See *Matter of Equitable Trust Co.* v. *Hamilton, supra,* where the court,

at page 245, say, in reviewing the audit of a board of super-visors, " we do not impair the efficacy of the principle that quasi-judicial action, when the statute intends it to be final, may not thereafter be revoked," citing *People ex rel. Chase v. Wemple, supra.*)

It is true that where an award is made the Commission is authorized, upon its own motion or upon the application of any party in interest, *on the ground of a change in conditions,* at any time to review any award, and, on such review, *may make an award ending, diminishing or increasing the compensation previously awarded* (Workmen's Compensation Law, § 22), but this is confined to an award previously made; and the statute in the very next section makes a clear distinction between an award and a decision, and the same distinction runs through section 20 of the act. " The power of the commissioners respecting the dismissal and reinstatement of police officers," say the court in *People ex rel. Cohen* v. *York (supra)*, " is one conferred by law; trials are regulated by law and the rules of the department. * * * There was no duty or obligation upon the police board to open the relator's case and grant him a rehearing. No right to such a rehearing was given him by law." The same principle applies in the case now under consideration. There was a decision of the Commission, subject to appeal on questions of law, and the claimant neglected to procure a review of the determination in the manner pointed out by the statute, and he has no right to a rehearing. If there had been an award he would have been entitled to a rehearing only upon the ground of a change in conditions (§ 22) and no facts appear in this case to show any change in the conditions existing at the time of the hearing here under review from those prevailing upon the original hearing.

Section 74 of the act, providing that " the power and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modification or change with respect to former findings or orders relating thereto, as in its opinion may be just," cannot be construed to overrule the positive provisions of the act. A case is, of course, a claim of which the Commission has primary jurisdiction. When, by its decision, it determines

that there is no case then it is without jurisdiction. As it is not called upon to make findings upon which an award is denied, so there is no authority for reviewing such denial, except by an appeal in the manner prescribed by section 23. It is the " findings or orders relating thereto " which the Commission is authorized to modify or change (§ 74), and not the determination of the Commission making or denying an award, for this is declared to be " final as to all questions of fact, and, except as provided in section twenty-three, as to all questions of law," and the Court of Appeals has " always given literal effect to the words ' final and conclusive,' and has sought to promote the policy upon which the statute is founded." (*Matter of Southern Boulevard R. R. Co.*, 143 N. Y. 253, 259; *People ex rel. Crane* v. *Hahlo*, 228 id. 309, 317.)

The award should be reversed and the claim dismissed.

CoCHRANE and VAN KIRK, JJ., concur in the result on the grounds that no causal relation is shown between the accident and the injury, and that the Commission could not properly find that the appellants were not prejudiced by the lack of written notice because of the reasons assigned by it for so finding; JOHN M. KELLOGG, P. J., and KILEY, J., dissent and vote for affirmance.

Award reversed and claim dismissed.