PEOPLE OF THE STATE OF NEW YORK ex rel. THE SWEDISH HOSPITAL IN BROOKLYN, Relator, *v.* JOHN P. LEO and Others, Constituting the Board of Appeals of The City of New York, Respondents, and EDWARD F. BEATTY, Doing Business under the Name and Style of CROWN AUTO SERVICE, and JOSEPH MORAN and GERTRUDE MORAN, as Administrators, etc., of CORNELIUS A. HAGGERTY, Deceased, Interveners.

Supreme Court, Kings Special Term, February, 1923.

Certiorari — New York city — board of standards and appeals — no power to reopen its determination — zoning law — when appeal from determination of superintendent of buildings once decided should not be reopened so as to grant application to erect garage.

The jurisdiction of the board of standards and appeals, a *quasi* judicial body performing not a single administrative or legislative act, is limited to hearing and determining appeals, and said board is without power to reopen and rehear a proceeding which has once been determined by it.

After the superintendent of buildings of the city of New York had refused a permit for the erection or extension of a public garage to accommodate more than five automobiles the interveners herein, who did not have the consent of the owners of eighty per cent of the frontage within the district affected by the proposed garage, appealed to the board of standards and appeals. A committee of said board thereafter appointed to examine the premises in question reported that the appeal should not be granted for the reason that the property in question " is situated directly opposite an extension of the Swedish Hospital and that a garage should not be permitted opposite to a ward for sick and injured people; this fact justifies this Board in withholding its approval." Thereafter and in accordance with one of its rules, which provided a method for the final disposition or termination of pending appeals, the said board by a vote of four to three adopted a resolution affirming the decision of the superintendent of buildings. Later said board, without any reason disclosed by its record, granted the intervener's application to reopen the proceeding, a notice of which having been served upon the Swedish Hospital it again appeared and objected to the proceeding upon the ground, among others, that the board having denied the application for the permit was without power to reopen the proceeding. Upon further consideration the board passed a resolution making a variation in the application of the " use district regulations of the building zone resolution " and granted the application for the permit. Upon a petition setting forth all the facts a writ of certiorari was issued requiring the board of appeals to certify its proceedings to the court for review, and thereafter the interveners applied for and were given leave to intervene in the proceeding. Upon granting the motion of the relator, the Swedish Hospital,

Supreme Court, February, 1923.                    [Vol. 120

to sustain the writ of certiorari, and denying that of respondent to dismiss the writ, *held*, that the action of the board in granting the intervener's application for leave to reopen the proceeding was in excess of its powers.

*If the contention of the board be sound, that it had power not only to reopen the proceeding but to grant the application for a permit for the garage under section 7-a and section 20 of the zoning resolution, which has the force of a statute, still the facts and circumstances sufficient to justify the variation made by the board should be shown in the record if the board intended to rely upon the provisions of the zoning resolution, but none such were shown here.*

CROSS-MOTION to sustain and to dismiss writ of certiorari.

*Carl E. Peterson,* for relator.

*George P. Nicholson (Francis E. V. Dunn* and *Joseph I. Berry,* of counsel), for respondents.

*Harry S. Sullivan (Henry F. Cochrane,* of counsel), for interveners.

CALLAGHAN, J.   After the superintendent of buildings had refused a permit for the erection or extension of a garage to accommodate more than five automobiles and the interveners had appealed to the board of standards and appeals, a committee of that board was appointed for the purpose of examining the premises in question.   This committee reported that the appeal should not be granted.   Thereafter, and on the 19th day of August, 1919, a resolution was adopted by a vote of four to three affirming the decision of the superintendent of buildings in denying a permit to the interveners.   The interveners did not have the consents of the owners of eighty per cent of the frontage within the district affected by the proposed garage.   On the 30th day of September, 1919, the board of appeals, upon the application of the interveners, without any reason disclosed by its records, granted permission to reopen the proceeding.

A notice was thereafter served upon the relator.   It again appeared and objected to proceeding on various grounds, one of which was that there was no power in the board to reopen the proceeding after it had been closed by a denial of the application.

The matter was, however, further considered and on the 29th day of June, 1920, a resolution was passed making a variation in the application of the " use district regulations of the building zone resolution " and granting the application.   Upon a petition setting forth all the facts a writ was issued out of this court, requiring the board of appeals to certify its proceedings to this court for review.   Thereafter the interveners applied for and received permission to intervene in this proceeding.

The premises in question are known as 157–159 Rogers avenue and are located between Sterling place and St. Johns place.   The

Swedish Hospital is located directly opposite the premises in question upon a plot of land having a frontage of 143 feet on Rogers avenue and 162 feet on Sterling place. That institution treats annually between 1,500 and 1,800 patients.

The relator here moves for a final order sustaining the writ of certiorari and the respondents for a final order dismissing the writ.

It appears from the return that after the board granted the application it reversed the ruling of the superintendent of buildings under the discretionary powers vested in it under section 7a and section 20 of the zoning resolution.

These motions present two questions: (1) Had the board power to open and rehear the application after it had been formally denied; and (2) had the board the power under the zoning resolution, to vary the provisions thereof, in view of the situation existing here?

On the 13th day of May, 1919, the board of standards and appeals amended section 2 of article 4 of its rules, providing for the final disposition of a case. As then amended article 4, subdivision 2a, of the rules provides: " The final disposition of any application or appeal before the Board of Appeals, shall be in the form of a resolution either reversing or modifying the order, requirement, decision or determination appealed from and granting the application or appeal or affirming the order and denying the application on appeal." By that rule the board prov'ded a method for the final disposition or termination of appeals pending before it.

The committee of inspection recommended that the appeal be denied for the reason that the property in question " is situated directly opposite an extension of the Swedish Hospital and that a garage should not be permitted opposite to a ward for sick and injured people; this fact justifies this Board in withholding its approval." But presumably the board was not led to denying the application solely for the reasons set forth in the report of the committee of inspection, as the resolution denying the application stated " that applicant failed to prove to the satisfaction of the board that the premises in question had been used for a garage for more than five motor vehicles on and previous to July 25, 1916."

The record before the board does not disclose any reason for reopening the proceeding, although the return seems to indicate that a reconsideration was ordered because of the use to which the neighboring property, as well as that of the property in question, had been put for some time prior to the adoption of the zoning resolution.

The question of the right of the board of appeals to rehear an application after it had once been denied is squarely presented upon these applications. This board is a *quasi* judicial body.

*People ex rel. Cotton* v. *Leo*, 194 App. Div. 921. The general rule, therefore, is that such a board is not vested with the power to reopen and rehear a proceeding which has once been terminated. *People ex rel. Smith* v. *Clarke*, 174 N. Y. 259; *Osterhoudt* v. *Rigney*, 98 id. 222; *People ex rel. Chase* v. *Wemple*, 144 id. 478, 482. The zoning resolution, having been passed by the sanction of the legislature, has the force of a statute, but nothing therein contained gives the board power to reopen and review its acts, after it had once determined and terminated the proceeding. Its jurisdiction is, therefore, limited to hearing and determining appeals. This board by its own rules specified the manner in which an appeal might be finally terminated. The resolution of August nineteenth was in accordance with its rules. The rule against reopening and rehearing applications once terminated has been enforced against the state industrial commission. *Matter of Conley* v. *Upson Co.*, 197 App. Div. 815. The authority relied upon to the contrary is that of *Matter of Equitable Trust Co.* v. *Hamilton*, 226 N. Y. 241. That case affirms the rule that when *quasi* judicial bodies finally act, their determination is final unless reversed by a superior body. The question under review was the right of a board of supervisors to reopen and rehear a claim which had once been rejected. That decision rests largely upon the proposition that the audit of a claim by the board of supervisors is administrative rather than judicial and affirms the rule announced in *People ex rel. Hotchkiss* v. *Supervisors*, 65 N. Y. 222, where it was said that the board of supervisors was *quasi* judicial only " in a very largely qualified sense " and " not in any such sense as renders an erroneous or improper audit or allowance incapable of correction by the body commiting the error; " and further that " boards of supervisors are mere local legislative bodies, in many respects of limited power."

The board of appeals can in no sense act other than in a *quasi* judicial capacity. It does not perform a single administrative or legislative act. As its name implies it is an appellate tribunal. It passes upon matters formally brought to its attention much the same as courts. It hears evidence and argument and decides controversies as the evidence dictates. It cannot act without some evidence. The record here shows that it denied this application for good reason and upon sufficient evidence to sustain its conclusion. There was not a scintilla of evidence presented to the board to warrant it in changing its final disposition of this proceeding. Presumably it had thoroughly considered the matters before it. A committee of its members had viewed the premises and they had heard the parties in favor of and in opposition to the

application. They acted judicially and adopted one of the only two courses open to it, namely, to grant or deny the application. The judgment of the majority of the board dictated a denial of the application and its action in so doing should not be again reviewed, because of a whim on the part of some of the members of the board. Were such a course generally followed, there would be no finality to a proceeding. A change of opinion on the part of a majority of the board, whether based upon sentiment or on good or on improper reasons, would suffice to warrant the opening of any proceeding finally determined by the board, if such power was vested in it. In *People ex rel. Brennan* v. *Walsh*, 195 N. Y. Supp. 264, a contrary view was expressed but pride of opinion does not compel an adherence to a decision which incorrectly states the law. Aside from the authorities controlling in matters of this kind, preventing the reopening of a determination of a *quasi* judicial board, the rule which leads to that conclusion is a salutary one. If such board were vested with the power of review, the members would always be subject to such charges as are made here, namely, of improper influences which are not disclosed by the record.

But the board contends that it had power, not only to reopen the proceeding, but to grant the application under the provisions of section 7a and section 20 of the zoning resolution. Section 7 provides that the board may vary the application of the " use district regulations " in permitting the extension of an existing building and the existing use thereof, upon the lot occupied by the building at the time of the passage of the resolution. There is no proof in this record to warrant the assumption that the premises in question were, prior to the passage of the zoning resolution, used for a business similar to that to which the interveners now propose to put the premises. If there was sufficient in the record to indicate that the premises were used as a garage for a limited number of cars used for hire, the operation of the garage for more than five automobiles upon the plot owned or controlled by the interveners would not be an extension of the business now or formerly conducted on the premises. There is a difference between operating a private garage for the hiring of motor vehicles and conducting a public garage for more than five motor cars. Section 20 of the zoning resolution is usually the final refuge of the board when it wants to do something for which there is no authority in law. It is claimed here that there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of the zoning resolution. Such difficulties or hardships are not disclosed. They are not

Supreme Court, March, 1923. [Vol. 120

here any more than in any other proceeding. To grant permission under that provision of the zoning resolution is to do away entirely with the provisions of the statute. There is no condition one could imagine which would not permit of the variation of the zoning resolution, if this case in point be regarded as one for warranting such permission. The fact that the property in question is more valuable for a garage than for other purposes furnishes no suffic'ent reason for granting a variation. The situation here is much the same as was disclosed in *People ex rel. Brennan* v. *Walsh, supra,* where it was said with reference to the board granting an application for the erection of a public garage under section 20: " I could not conceive of a situation where a public garage could be so regarded, and it was never intended that the board should exercise such power in a situation such as is presented here. If such was the case, there would be no necessity for consents, rules or regulations. The power would be with the board in all cases. Its judgment, even though arbitrarily exercised would be final. It was only those situations which presented exceptional and unusual conditions that permit the board to exercise its judgment in order to relieve excessive hardships. It is not unlike similar power given to the superintendent of buildings and other officers to waive the strict letter of the law in the interest of preventing unnecessary hardships in exceptional and difficult cases. To hold otherwise would be to submit the whole operation of the Zoning Law to the arbitrary discretion of the board of appeals. There is a natural desire for boards of similar jurisdiction to magnify their power and extend it, no doubt in good faith in many instances; but, unless curbed, the magnifying of their powers would lead to a total disregard for the statute."

Facts and circumstances sufficient to justify such variation should be shown in the record if the board intends to rely upon the provisions of section 20. None such is shown here. The motion of the relator is, therefore, granted and that of the respondents denied.

Ordered accordingly.