In the Matter of the Application of LANSING P. REED, Petitioner, Appellant, and VANDERBILT WEBB and Others, Intervenors, Appellants, for a Certiorari Order against THE BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK, Constituted by and under Chapter XIV-A of the Greater New York Charter, as Amended, and Others, Respondents, and WILTHAN REALTY CORPORATION, Intervenor, Respondent.†

First Department, June 13, 1930.

† Affg. 138 Misc. 187; affd., 255 N. Y. 126.

*Lawrence R. Condon* of counsel [*McKown & Condon*, attorneys], for the appellants.

*Henry J. Shields* of counsel [*William T. Kennedy* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the respondent Board of Standards and Appeals.

*Nathan Burkan* of counsel [*William Klein* with him on the brief; *Leopold Friedman*, attorney], for the respondent Wilthan Realty Corporation.

MERRELL, J. The Wilthan Realty Corporation holds a long term lease of the entire frontage on the west side of Third avenue between Seventy-first and Seventy-second streets for a distance of one hundred feet. Under the Building Zone Resolution of the City of New York the land may be used for business purposes. Upon this property the Wilthan Realty Corporation planned to erect a high-class moving picture theatre and for that purpose, and, indeed, prior to its obtaining its long term lease of the land lying along Third avenue between East Seventy-first and Seventy-second streets, the said realty corporation had acquired title to two parcels of land, one on the southerly side of East Seventy-second street and the other on the northerly side of East Seventy-first street, immediately in the rear of the leased parcel along Third avenue. A portion of these two parcels of land was within the one-hundred-foot business district and a portion extended westerly and into the residential district under said Building Zone Resolution. By the resolution adopted by the board of standards and appeals the intervenor, respondent, was granted the right to erect its theatre building not only upon its premises within the business district one hundred feet westerly of Third avenue, but was given the right to extend its theatre building

into the residence district a distance of twenty-five feet on East Seventy-second street and nineteen feet eight inches on East Seventy-first street. Of the lands owned by the intervenor, respondent, there remained a space of four or five feet in width lying along the westerly side of its proposed theatre building which it designed to use as an open court. The only entrance from the theatre building into this court was to be through an emergency exit from the orchestra floor about thirteen feet below the surface of Seventy-first street, and which exit was required under restrictions of the city with reference to the erection of theatres. The application was granted by the board of standards and appeals under subdivision c of section 7 of the Building Zone Resolution. So far as pertinent, the Building Zone Resolution under which this permit was granted provides as follows:

" Use District Exceptions. The Board of Appeals * * * may, in appropriate cases, after public notice and hearing, and subject to appropriate conditions and safeguards, determine and vary the application of the use district regulations herein established in harmony with their general purpose and intent as follows: * * *

" (c) Permit the extension of an existing or proposed building into a more restricted district under such conditions as will safeguard the character of the more restricted district."

The order of certiorari herein was obtained by the petitioner, adjacent property owners intervening and appearing herein as petitioners, appellants. The rights of these intervenors are identical with that of the petitioner. Under the resolution which the petitioner sought to review by the certiorari proceedings the Wilthan Realty Corporation as owner and lessee under a long term (sixty-three years) lease was permitted to erect a theatre building with a wide lobby and stores on the westerly side of Third avenue between Seventy-first and Seventy-second streets with a frontage thereon of 204 feet 4 inches and with a depth of 125 feet on Seventy-second street and 119 feet 8 inches on Seventy-first street. As before stated, a 5-foot court was to separate the proposed theatre building from the other buildings on the west. Beyond the 100-foot limit westerly from Third avenue and up to a point 100 feet easterly of Lexington avenue the land is all occupied by residences and apartment houses. The intervenor, respondent, had the right, within the 100-foot business district west of Third avenue, to erect any building it saw fit to erect thereon. It, however, desired to erect, not a cheap theatre building or building for commercial purposes, but to erect a high-class, ornamental theatre, and, therefore, for such purpose, in order to make the proposition

reasonably profitable, required greater depth than 100 feet, and, therefore, acquired the additional land to the west of the leased parcel and which, to some extent, invaded the residential district. A public hearing was had and the whole matter threshed out. Following the filing of the petition herein an answer and return was filed by the board of standards and appeals, and thereafter the corporation counsel of the city of New York, on behalf of the board of standards and appeals, served notice of motion to quash the certiorari order, and to dismiss the petition, and to confirm the determination of the board. The matter came on for hearing at Special Term and after an extended argument and upon the record before the court, the court dismissed the certiorari order by the order appealed from.

The issues raised by the appellants herein seem to be four in number. It is *first* claimed by appellants that the board of standards and appeals had no jurisdiction to entertain the application or to grant it, owing to the fact that it had, prior to such application, denied an application for similar relief in 1927; *second,* it is claimed that the appellants were denied a fair hearing by the board; *third,* that the board was without power to permit the extension of a commercial building into a residence district without showing hardship, as required by section 21 of the Building Zone Resolution; and, *fourth,* that the application was without merit, and should have been denied upon the merits.

Taking up these points in the order mentioned, we do not think there is any force in the suggestion that the board of standards and appeals was precluded from entertaining and granting the application for the permit asked by the intervenor, respondent, by reason of the prior denial of a similar application. After an examination of the record, we do not think that there is such a similarity in the application which was denied in 1927 and that which was granted as to preclude the board's considering the second application. The only similarity seems to lie in the fact that the general district was the same and the application was for a permit to extend the respondent's theatre building into a residence district. The appellants claim that there were two prior applications which were denied. As a matter of fact, there was but one. An application was made in 1926, which was prematurely made before respondent had acquired the premises in question and before it had obtained a lease of the land lying along Third avenue. Concededly this application was premature and was withdrawn by the applicant. The 1926 application was never passed on by the board of standards and appeals, and, therefore, that prior application has no bearing on the present application.

The theory upon which it is asserted the board of standards and appeals is precluded from considering successive applications is that it occupies a quasi-judicial position and that it cannot reverse itself upon the same facts by a subsequent ruling. In 1927 an application was made by respondent for a permit to extend its theatre building into the residence district. However, the application in 1927 was quite different from the application which was granted by the action of the board of standards and appeals here under review. In granting the motion to quash, the court at Special Term (138 Misc. 187), among other things, said: " As to the objection that the board had no power to reconsider the application after having once denied it, it is well pointed out that the second application was not one of reconsideration but a new application upon different plans. It is true the same general plot was involved. On the other hand, the second set of plans introduced the conditions of safeguard which were absent in the original plans, and a situation is presented unlike the one in *People ex rel. Swedish Hospital* v. *Leo* (120 Misc. 355; affd., 215 App. Div. 696), and more akin to the case of *Matter of Vesell* v. *Walsh* [137 Misc. 806]; affd. by Appellate Division, Dec. 21, 1928, 225 App. Div. 742)."

The authorities cited by appellants in support of their position that the second application may not be maintained for the same relief are clearly not applicable to the situation presented by the facts in the case at bar. In *Matter of McGarry* v. *Walsh* (213 App. Div. 289), cited by appellants, permission had been granted to reopen the proceedings by the board of standards and appeals because of alleged changed conditions. The court, however, deemed that there was no substantial change. In the *Swedish Hospital* case (120 Misc. 355; affd., 215 App. Div. 696) and in *Matter of Riker* v. *Board of Standards & Appeals*, decided by this court (225 id. 570), the board reopened a proceeding and attempted to rescind and set aside a former decision. This we held could not be done, except upon presentation of additional facts. We held that the facts were substantially the same on both applications, and that, therefore, the board of standards and appeals was powerless to set aside and disregard its prior action. In *Matter of Hall* v. *Walsh* (137 Misc. 448; affd., without opinion, 221 App. Div. 756) the Special Term, among other things, said: " If the facts and situation were the same in both appeals, the prior decision would seem to be binding and require a similar holding in the later appeal. *But if there had been a substantial change the matter would be open for a new determination.*" (Italics are the writer's.)

The court indicated in that case that ordinarily whether there was such a change was for the determination of the board of

standards and appeals, in the absence of bad faith. The appellants insist that there was bad faith shown by the board of standards and appeals in the case at bar. That question will be later considered.

In the application in 1928, under which the permit was granted by the board of standards and appeals and here under review, the facts were materially different from those which were presented to said board upon the application made in 1927. The answer and return of the board of standards and appeals herein to the petition for the order of certiorari clearly discloses the differences between the two applications, which are as follows: In the 1927 application the proposed building extended thirty feet into the residential zone on Seventy-second street. There were five stores on Seventy-second street and one corner store, a portion of the corner store being on Seventy-second street. The total frontage on Seventy-second street was one hundred and two feet. One store, approximately fourteen feet in depth, was in the residential zone, and fifteen feet of the lobby extended into the residential zone. In the building outlined in the 1928 application, which was granted, the proposed building extended only twenty-five feet into the residential zone on Seventy-second street. Instead of five stores on Seventy-second street there were to be only two stores on Seventy-second street, both of which were in the business zone; and the store frontage being fifty-five feet, no commercial portion of the new building is to be in the residential zone. No portion of the lobby was to be in the residential zone. The emergency exit on the westerly end leading to Seventy-second street and a five-foot court were provided, entirely free from buildings on the west end of the property. On the Seventy-second street side the second floor under the 1927 application was to be used entirely for commercial space. Under the 1928 application but one hundred and nine feet was to be used commercially, with no windows on any part of the space within the residential zone. In the building proposed by the 1927 application the Seventy-second street frontage was to be of Spanish type, ornamental, and not in keeping generally with the surrounding neighborhood. There was to be a large electric vertical sign about fifty feet high over the marquise and the marquise extended sixteen feet into the residential zone. On the Seventy-second street front of the building as proposed in the application granted there was an entire change, the building to be built in conformity with the other buildings in the locality. The vertical electric sign was eliminated, and the marquise does not extend into the residential zone. On the Seventy-first street side of the building the 1927 application provided that its westerly end was to extend eighteen

feet two inches into the residential zone, and provided for a court fourteen feet in width by approximately thirty-five feet in depth at the westerly end of the Seventy-first street end. In the application here under review the plan is changed to call for the building at its westerly end extending nineteen feet and eight inches into the residential zone and for a court thirteen feet six inches in width by approximately sixty-four feet in depth. Under the 1927 application the building was to be of Spanish type, highly ornamental in design, and in many colors. Under the renewed application of 1928 here under review it is proposed that the front wall shall be of the same type as the new Seventy-second street front and in keeping with the general character of the buildings now in the neighborhood. The 1927 plans contained solid brick wall the full height of the building running south from Seventy-second street along the westerly lot line for a distance of about one hundred and seventy feet, no opening in the westerly wall except one emergency exit. In the plans now approved by the board of standards and appeals a court runs through the block at the westerly line two hundred and four feet in length, giving ventilation to the adjacent property to the west. No openings in the westerly wall are called for, except one orchestra emergency exit, which is about thirteen feet below the Seventy-first street level. The seating capacity of the proposed building under the 1927 plan was 3,280, whereas, the seating capacity under that now approved by the 1928 application is reduced to 3,140. In the application of 1927, eleven stores were provided for Third avenue, but now, owing to the enlargement of the Third avenue entrance, nine stores are provided thereon. Under the terms of the Building Zone Resolution above quoted it is required that the permit to extend a commercial building into a residential district can be granted only " under such conditions as will safeguard the character of the more restricted district." It seems to us that every change that has been made in the plans contained in the 1928 application from those contained in the 1927 application is for the safeguarding of the character of the restricted district, and is done at the sacrifice of the rights of the intervenor, respondent. Under the proposed plans, while a small portion of the theatre will be in the residence district, all its commercial activities are to be carried on within the business district. Under the new plan there is a curtailment of commercial activities on the side streets, even within the business district. Under the 1927 plan five stores were provided on Seventy-second street, one of which was within the residence district, as was also a portion of the theatre lobby. By the plans approved by the board these objections have been entirely eliminated, and the emergency exit to the west has been

practically eliminated through the enlargement of the lobby on the Third avenue side.

Unquestionably the Wiltham Realty Corporation has a clear right to erect a theatre on its property within the business district. It would, therefore, be entirely unnecessary to make application to the board of standards and appeals, except by reason of the fact that the proposed building is twenty-five feet larger to the west on Seventy-second street and nineteen feet eight inches deeper on Seventy-first street. That these changed conditions in the two applications are sufficient to justify the board's reversal of its action on the former application seems entirely clear under the decisions of this court. (*Matter of Riverside St. Clair Corp.* v. *Walsh*, 131 Misc. 652, 655; affd., 225 App. Div. 655; *Matter of Vesell* v. *Walsh*, Id. 742; *Matter of Hall* v. *Walsh*, 221 id. 756.) In *Matter of Riverside St. Clair Corp.* v. *Walsh* (*supra*), Mr. Justice FRANKENTHALER at Special Term said: " It cannot properly be said that both applications are identical and that, therefore, the denial of the first necessitates the refusal of the second. The proposal in the latter that the board prescribe safeguarding regulations sufficiently differentiates it from the previous appeal to that body to permit the making of a different ruling. The board was without power to apply the provisions of subdivision (c) on the prior application in the absence of any expression on the part of the applicant that he was willing to accept such restrictions as might be prescribed if that part of section 7 were invoked. The cases of *People ex rel. Swedish Hospital* v. *Leo* (120 Misc. 355; affd., no opinion, 215 App. Div. 696) and *Matter of McGarry* v. *Walsh* (213 id. 289) are easily distinguishable. In the former it was held that the board could not after denying an application reopen the proceeding and reconsider its action without any new evidence or justification disclosed by its records. In the *McGarry Case* (*supra*) the applicant failed to substantiate his appeal on the ground of hardship, and permission to construct a garage was, therefore, denied. Eight months later the board granted permission to reopen the proceedings on the ground that a large gas tank had been erected in the rear of the premises since the board's ruling. It appears, however, that the construction of that very tank had been mentioned in the prior application and had been a factor considered by the board in arriving at its earlier determination. The court in its opinion emphasized (bottom of p. 293) that both applications invoked the very same section and no other and (p. 300) that no new facts were disclosed, the board having merely reversed its prior decision without any reason or justification. It must be patent that neither of these authorities bears any analogy to the

present proceeding." This court unanimously affirmed that decision.

*Matter of Hall* v. *Walsh* (*supra*) arose in the Second Department, and it was likewise held that where there were changed conditions in the applications, a renewal might be considered. Among other things, Mr. Justice CROPSEY, presiding at Special Term in the *Hall* case, said, with reference to the change in conditions (137 Misc. 448): " Whether there was such a change would be primarily for the board to determine. Here it has so found and I find nothing in the record to justify a reversal of that finding. Having the power to make its decision the discretion of the board in the absence of bad faith may not be reviewed. (*Matter of Boyd* v. *Walsh*, 217 App. Div. 461.)"

The case of *Matter of Vesell* v. *Walsh* (225 App. Div. 742) passed through this court recently. As in the case at bar, the application at Special Term was to quash an order of certiorari, and the decision of the Special Term was affirmed here, without opinion. In the *Vesell* case the board granted an application to erect an eight-story garage occupying the entire block between Sixth and Seventh avenues between Fiftieth and Fifty-first streets, which was a business district in which garages were prohibited. There had been two prior applications for the erection of such garage, in each of which, by formal resolution, the application was denied by the board of standards and appeals. The changed conditions which induced the board to entertain the third application were largely a variation in the plans. It was shown that the change in plans was of a substantial nature. As stated by Judge LEHMAN in *Matter of Larkin Co.* v. *Schwab* (242 N. Y. 330, 336): " It may change its views as to what is for the best interests of the city; it may give weight to slight differences which are not easily discernible." However, in the *Vesell* case the change in the plans was of substantial nature, but no more so than the change in the plans in the instant case. In the *Vesell* case the original application was for three levels below the street level, whereas in the amended plan there is but one story below the street level. In the changed plans six standpipes were provided as against two in the prior applications. Improved entrances and exits were provided and there was provision for a bus terminal in the building, and additional fire retarding improvements. These the board of standards and appeals held were material and substantial changes and sufficient to justify a rehearing. In the case at bar among other changes in the plans of the building there was an elimination of all stores and lobbies in the residence district, a reduction of the stores on Seventy-second street from five to two, the elimination of all windows on

the second floor of the commercial space in the residence district, and conformation architecturally of the Seventy-second street front and the Seventy-first street front with other buildings in the locality, and the elimination of the fifty-foot vertical electric sign and the marquise within the residence district. In the case at bar it is not sought to change the use of the district in any degree, but merely to use a very small part of the residence district in order to accommodate the rear of the theatre. It is idle to claim that such permission affected in any degree the remainder of the residential district to its detriment. The appellants reiterate their claim that if this encroachment is allowed it will destroy the original character of the neighborhood. On the face of it, such claim is nothing short of an absurdity. It is also claimed that by the proposed erection the value of the residential property will be lessened. At the present time the property upon which the respondent proposes to locate its theatre is occupied by old, dilapidated and rundown buildings occupied by such tenants as bootblacks, a dance hall and other undesirable activities. Can it be said that the erection of a high-class, dignified theatre building, as shown by the plans in this case, will detract from rather than enhance the value of the nearby residential property? Much stress is laid on the present peace and quiet of the locality. In his oral argument and in his brief on the appeal counsel for the appellants dilates at length on the " peace and quiet " which the neighborhood at present enjoys, and the threatened intrusion therein that the slight extension of the proposed theatre would entail. It is very difficult to understand how there can be much peace and quiet in a locality so near Third avenue with its busy traffic and its noisy elevated railway and adjacent to the dance hall and other business enterprises now being carried on. The respondent clearly has a right to build a theatre on its property within the business district, and it seems to us utterly absurd to claim that this undoubted right which the respondent has would result in any greater injury to the adjacent property owners by the erection of a fine theatre building, architecturally in conformity with the other property in the district. If the respondent is denied the right to erect its proposed theatre it will be compelled to erect a cheap theatre within the business district and the remainder of its property will be occupied by the erection of tenement houses which well may be erected without any conformity whatever to the property of the adjacent owners and which would undoubtedly be a much greater detriment to such property than the erection of the proposed theatre. The appellants seem to contend that no theatre should be erected at Third avenue at this point and that by the erection of such theatre

the peace and quiet of the neighborhood would be disturbed. The appellants lose sight of the fact that the intervenor, respondent, has a legal right to erect its theatre. The only question is whether it will build a theatre of fine proportions and architectural beauty or a mere cheap moving picture house for the accommodation of low class entertainment. Such a use certainly will not enhance the value of the adjacent property. Unquestionably this theatre will attract people from Third avenue and the east thereof, more than from the west of Third avenue. Unquestionably the wide main lobby on Third avenue will be that chiefly used for the entrance and egress of patrons of the theatre. We are unable to appreciate how, by the existence of the building as proposed, there can be any additional hardship to the adjacent owners. Upon the first point of lack of jurisdiction, we think the *Vesell Case (supra)* is sound authority in support of the action of the board of standards and appeals.

As to the appellants' claim of bias on the part of the board of standards and appeals and that they were not given a fair hearing, an examination of the record convinces me that there was nothing of substance to such contention. The appellants were given a fair hearing, and all reasonable time was afforded them to present their case. It is true that at certain points in the case, to which attention is directed by appellants' brief, there was some little impatience shown by the chairman of the board toward counsel for petitioner, but there is nothing whatever to support the contention that the board of standards and appeals did not grant the petitioner a fair hearing.

It is also the contention of the appellants that the board of standards and appeals had no authority to grant the application and that the case was granted under the provisions of subdivision b of section 7 of the Building Zone Resolution. As a matter of fact, the application was not granted under subdivision b of section 7, but under subdivision c of section 7 of the Building Zone Resolution. The board of standards and appeals acted solely within the provisions of subdivision c of section 7. The motion to quash the certiorari was argued by counsel for the city and by the applicant solely under subdivision c of section 7, and the application was so treated in the opinion of the justice presiding at Special Term. The application was not granted upon any showing of hardship or practical difficulty, as required by section 21 of the Building Zone Resolution. The courts have held that the board may exercise the power granted it under subdivision c of section 7 entirely regardless of the provisions of section 21 as to practical difficulty and hardship. (*People ex rel. Fordham M. R. Church* v. *Walsh,* 244 N. Y. 280; *People*

*ex rel. Smith* v. *Walsh,* 211 App. Div. 205; affd., 240 N. Y. 606; *Matter of Riverside St. Clair Corp.* v. *Walsh,* 131 Misc. 652; affd., 225 App. Div. 655.) In the case of *People ex rel. Smith* v. *Walsh (supra)* it was held that subdivision c of section 7 of the Building Zone Resolution afforded ground for the granting of an application entirely separate and distinct from the provisions of section 21; and the same was held in *Matter of Riverside St. Clair Corp.* v. *Walsh (supra).*

Upon the merits of the case the appellants have little to say, contenting themselves with raising the claimed objections to procedure. We think the board of standards and appeals was entirely justified in granting the application of the intervenor, respondent, upon the merits. The erection of the proposed building will be for the benefit of the adjacent property owners instead of to their detriment. A theatre is bound to be erected in any event, and it only remains to be determined whether a cheap, unattractive structure shall be erected, or the one proposed of dignified proportions and in conformity with the architectural plans of the adjacent buildings. I think the respondent has used every effort to formulate plans for the erection of a structure which will be an ornament to the locality, and will not invade any rights of the adjacent property owners.

The application here under review does not present any substantial questions of fact. The whole matter was considered by the justice at Special Term and decided upon the merits. We think it was within the province of the court at Special Term to act without witnesses, and that it was within the power of the board of standards and appeals to decide the matter without the presence of witnesses. The board had a right to draw upon its own knowledge of the physical situation of the locality. (*People ex rel. Fordham M. R. Church* v. *Walsh,* 244 N. Y. 280, 287.) The return of the board to the application for certiorari herein is full and complete. The facts stated in said return are undisputed and uncontroverted. We think, therefore, that the motion to quash the certiorari order was properly granted. It was certainly in conformity with the practice adopted by the court and approved by this court in *Matter of Vesell* v. *Walsh* (225 App. Div. 742).

The order appealed from should be affirmed, with ten dollars costs and disbursements to the respondents against the appellants.

DOWLING, P. J., concurs; FINCH and McAVOY, JJ., dissent.

SHERMAN, J. (concurring for affirmance). The Wilthan Realty Corporation controls by deed and lease the premises 1230–1248 Third avenue, constituting the entire block front on the westerly

side of Third avenue between Seventy-first and Seventy-second streets, as well as the premises 182–184 East Seventy-second street, and 183–187 East Seventy-first street, the whole constituting a plot extending westerly from Third avenue, 130 feet on Seventy-second street, and 133.4 feet on Seventy-first street.

On July 17, 1928, the board of standards and appeals granted its application to erect a theatre of fireproof construction on this plot, the proposed building to have a frontage of 204 feet 4 inches on the avenue, with a depth of 125 feet on Seventy-second street and 119 feet 8 inches on Seventy-first street. Under the Building Zone Resolution the property abutting on Third avenue and for 100 feet westerly on the side streets is within the business district; so that a portion of the building to the extent of 25 feet on Seventy-second street and 19 feet 8 inches on Seventy-first street would be located in the residence district. A court or areaway is to separate the proposed structure from the buildings to the west.

After a public hearing, the application of the intervenor, respondent, for a variation so as to permit the erection of this building was granted by the board of standards and appeals under the authority conferred by subdivision c of section 7 of the Building Zone Resolution.

Thereupon the petitioner sued out an order of certiorari under section 1290 of the Civil Practice Act and section 719-a of the Greater New York Charter to review the determination of the board, the petitioner and other applicants being property owners in the adjacent residence district. That order of certiorari was dismissed at Special Term upon a motion to quash, and this appeal reviews the order dismissing the certiorari order.

Appellants contend that an issue arises upon the petition and the return, so that the motion to quash the certiorari order was erroneously granted. The return here, however, sets forth all the evidence and proceedings before the board and states the reasons for its action. "The return must be taken as conclusive and acted on as true." (*People ex rel. Lester* v. *Eno*, 176 N. Y. 513, 518; also *People ex rel. Miller* v. *Wurster*, 149 id. 549, 554.)

Thus there was before the Special Term a complete record upon which to review the action of the board; the allegations of the petition raise no real issue. The court was justified in considering and determining the matter upon the merits.

The power of the board of standards and appeals to grant this application is questioned because during the preceding year it

had denied an application for a like variation upon the same premises. That contention would be upheld, were it not for the fact that the record before us discloses a great variety of important changes in the plan of the proposed structure as compared with the earlier plans, among which are the elimination of stores upon both street frontages in the residence district, the reduction in the area of the residence district to be built on, changes in exits, the adaption of the architecture of the building to conform to that prevailing in the residence district, and many other details of greater or less importance, all tending to safeguard the character of the more restricted district. These changes and the differences between the plans presented suffice to permit the board to pass upon this application, with power to determine it unimpaired by the prior decision made upon the earlier application. (*Matter of Riverside St. Clair Corp.* v. *Walsh*, 225 App. Div. 655; *Matter of Vesell* v. *Walsh*, Id. 742; *Matter of Hall* v. *Walsh*, 221 id. 756.)

There remains the important question: Whether or not under subdivision c of section 7 of the Building Zone Resolution, the board of standards and appeals was vested with power to change the use of the strip of land in question so that the theatre building might project into the residence district. That section of the Building Zone Resolution expressly grants to the board power in appropriate cases, after public notice and hearing, to permit the extension of the contemplated use into the residence district, provided such conditions are attached as adequately safeguard the character of that district so that the variance of the use district regulations shall be in harmony with the general purpose and intent of the Building Zone Resolution. The grant of power, under such circumstances, is to " (c) Permit the extension of an existing or proposed building into a more restricted district under such conditions as will safeguard the character of the more restricted district."

The question accordingly is whether the building to be erected upon the strip of land in the residence district to the west of the larger area in the business district will constitute such an invasion of the residence district that it should be held unjustified, as a matter of law.

In *People ex rel. Fordham M. R. Church* v. *Walsh* (244 N. Y. 280, 289) the court mentions that previous decisions of the courts " have conceded a wide scope to the discretion of the board." In *People ex rel. Sheldon* v. *Board of Appeals* (234 N. Y. 484) it was held that the power to make variances from the zoning regulations (p. 494) was " delegated to the board of appeals directly by the Legislature and by the board of estimate and apportionment pursuant to legislative authority." The determination of the

board there sustained permitted the erection of a business building upon a plot of land, a large part of which was within a residence district as fixed by the zoning resolution, the reason assigned being the change in use of property in the immediate vicinity. The exercise of the power of the board to permit variations of the zoning regulations has likewise been sustained in *People ex rel. Helvetia Realty Co.* v. *Leo* (231 N. Y. 619) and in *People ex rel. Facey* v. *Leo* (230 id. 602).

Nor must subdivision c of section 7 be read as limited by section 21 of the Building Zone Resolution. The power under subdivision c of section 7 is to determine and vary the application of the use district regulations by permitting the extension of an existing or proposed building into a more restricted district. Section 21 (formerly section 20) deals with the right to vary the provisions of the resolution itself. This is pointed out in *People ex rel. Sheldon* v. *Board of Appeals* (*supra*, p. 494): " The board of estimate and apportionment pursuant to chapter 601, Laws of 1917, amended the regulations of the zone resolution by conferring upon the board of appeals power in appropriate cases and subject to appropriate conditions and safeguards to determine and vary the application of the use district regulations in harmony with their general intent and purpose (Section 7) also, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution, in a specific case, to vary any such provision in harmony with its general purpose and intent that substantial justice may be done. (Article 5, section 20.) No question can arise as to the authority of the board of estimate and apportionment to thus amend the zone resolution regulations. The authority conferred by section 7 upon the board of appeals was to ' determine and vary ' the use district regulations. By section 20 to ' vary ' any provision of the resolution in a specific case, where substantial justice will result therefrom. The words ' determine and vary ' as used in the statute and the amended zone resolution must receive a reasonable construction."

Determinations made pursuant to subdivision c of section 7 are not to be confused with applications granted under section 21.

In *Matter of Stillman* v. *Board of Standards & Appeals* (222 App. Div. 19; affd., 247 N. Y. 599) the court annulled a determination which granted an application made under section 21, the effect of which was to change a substantial area from a residence to a business district without proof of practical difficulty or hardship or that the public health, safety and general welfare were advantaged thereby. The situation there was totally different from the present.

If the narrow strip located westerly of the business district be not included in the plot to be improved, a theatre of smaller capacity and of a construction less artistic and less in harmony with the architecture of the buildings in the contiguous residence area could and probably will be erected on the area within the business district. The conditions imposed by the board adequately safeguard the character of the residence district, as required by the Building Zone Resolution. The plans which are presented and have been sanctioned by the board relieve the two streets within the residence area, as far as reasonably may be done, from a use which interferes to any considerable extent with the residence district as established by the Building Zone Resolution. Where a projected improvement does no real harm to the district and, as here, the granting of the variation in the use is not in conflict with the general purpose and intent of the Building Zone Resolution, the board's determination in that regard should not be annulled. Even if the merits of the proposal be held to be debatable, where the conclusion reached in good faith is not clearly at variance with the Building Zone Resolution or with the purpose of the Building Zone Resolution, the action of the board must be sustained. That board is invested with the power under the language of the Building Zone Resolution to declare an exception in the public interest. Every case, of course, must turn upon its particular facts. The extension of the business district into the residence district here is comparatively slight. No unjustifiable invasion of the residence district will be sanctioned. But the power of the board to determine and vary the use district regulations exists; and no abuse in its exercise having been here established, the order appealed from should be affirmed, with ten dollars costs and disbursements.

McAvoy, J. (dissenting). An order was made at Special Term New York county, on April 17, 1929, which quashed an order of certiorari which had been theretofore issued, on motion of the petitioner, pursuant to the Civil Practice Act (§ 1283 et seq.) and section 719-a of the Greater New York Charter (Laws of 1901, chap. 466, added by Laws of 1916, chap. 503, as amd. by New York Local Laws of 1925, No. 13), which order was granted for the purpose of reviewing the determination of the board of standards and appeals of New York city. Prior thereto, and in July, 1927, the board had adopted a resolution denying an application of the Wilthan Realty Corporation for a variation of the provisions of the use district regulations of the Building Zone Resolution, which affected certain property owned and leased by it, fronting on Third

avenue for the entire block between Seventy-first and Seventy-second streets on the west side of the avenue.

Permission was sought by the Wilthan Realty Corporation to extend, from the business district into the residence district on East Seventy-first and Seventy-second streets, a portion of its theatre proposed to be built on the block front. It was proposed to extend the building thirty-three and four-tenths feet on East Seventy-first street, and thirty feet on East Seventy-second street.

On July 17, 1928, the board of standards and appeals adopted a resolution granting a renewal application of the intervenor Wilthan Realty Corporation, affecting the same premises, and allowed a variation of the use district regulations affecting the premises, and authorized the realty corporation to construct a moving picture theatre and vaudeville house, occupying in part a plot which is in the residence district. Thereupon the petitioners sought an order of certiorari, which was granted and which directed the board to make answer and return within twenty days. The answer was thereafter filed in February, 1929.

Respondent board then moved to quash the certiorari order issued on August 21, 1928, and this motion was granted in April, 1929.

These appellants are the property owners who occupy the area affected by this granting of permission to operate a moving picture theatre and vaudeville house in the neighborhood. They seek to reverse the order quashing the order of certiorari and are asking for an affirmance of the decision of the superintendent of buildings of the borough of Manhattan, made in January, 1928, which denied the application of the respondent Wilthan Realty Corporation, because it violated the provisions of the Building Zone Resolution.

The premises upon which the moving picture theatre is proposed to be erected are the entire block front on the west side of Third avenue between Seventy-first and Seventy-second streets; and plots on East Seventy-first and Seventy-second streets extending 133.4 feet and 130 feet, respectively, west of Third avenue.

Third avenue is within the business district; and East Seventy-first and Seventy-second streets, from a point 100 feet west of Third avenue to a point 100 feet east of Lexington avenue, are within residence districts. Lexington avenue, between Seventy-first and Seventy-second streets, is within a business district.

The two lots on East Seventy-first street are wholly within the residence district, which is proposed to be invaded by this theatre. One plot on East Seventy-second street is also wholly within a residence district; the other plot on East Seventy-second street is

divided so that the easterly half of the twenty-foot plot is in the business zone, and the westerly half in the residence zone.

Both Seventy-first and Seventy-second streets are improved on both sides with either private dwellings or high-class apartment house improvements, which make the neighborhood desirable for private residential purposes; and there are no non-conforming uses in East Seventy-first street, being improved on both sides with four and five-story private dwellings; and on East Seventy-second street the only non-conforming use in the area is a small one-story bank building on the south side, which was built in 1906 and was erected prior to the zone commission's laying out the area in question as a residence district. Even those frontages on Lexington avenue, at the northeast and southeast corners of East Seventy-first street, and the northeast and southeast corners of East Seventy-second street, although within the business zone, are at present being used for residential purposes, and improvements thereon have been made within the last three or four years.

It is appellants' claim that if the proposed invasion is permitted, the quiet, residential character of these two streets will be destroyed, values of property diminished, marketability as residences lessened, and the further development of this section as a residential area would be suppressed. There will be exits from the proposed theatre on East Seventy-first and Seventy-second streets, wholly within the residential area, which will discharge several thousand people into the zone daily and nightly. This will change the character of the neighborhood as it has been developed since the former application was denied.

The property in the business area is perfectly adaptable for business uses and would show a sufficient yield on the investment if used solely for business purposes, and the property in the residential area, already improved for residential uses, would return an appropriate sum on an investment if used for either private dwellings or for conforming apartment house uses. The denial of the variation would, therefore, be no hardship to the Wilthan Realty Corporation, the respondent, other than a restriction against the building of a larger theatre, since a smaller one with less capacity will be less profitable.

On the prior application, in July, 1927, the denial was based upon the fact that the board deemed that the applicant was not entitled to relief under subdivision c of section 7 of the Building Zone Resolution, on the ground of unnecessary hardship and practical difficulty. No change in the facts and conditions of the property or neighborhood has been had, which would warrant a change of its ruling

at the time the present application was made. Without such new facts or change in the condition of the neighborhood, the board could not review its own findings and determination and reverse its prior rulings, having no evidence to warrant the granting of the application upon the grounds of necessity, emergency or hardship, only the fact that this business district use will be more completely realized if part of the residential area may be included within its scope.

Since this proceeding at Special Term was a motion to quash a certiorari order, such motion is in the nature of a demurrer, and asserts that the petitioner has no right to any relief, assuming all the facts alleged to be true. Under this rule the questions of fact, to wit, that there were no new facts and no changed conditions or circumstances, and that there was no new evidence, and that there was no material change in the new application when compared with the former, all of which matters were alleged in the petition, should have been deemed to be true.

The appellants also alleged that the board was biased, prejudiced and hostile; that they did not have a fair and impartial public hearing, and that the decision was made arbitrarily and capriciously. These allegations also must be deemed to be true on a motion to quash, and the court could not dismiss the proceeding nor quash the same without a hearing to these petitioners.

We think, too, that the board had no power to entertain or grant the renewed application of the Wilthan Realty Corporation, because of its denial of the prior similar application in 1927. The mere moving of a lobby, the changing of the location of a sign, the rearranging of a stair front, decreasing the invasion of the building in the residential zone on one street, and increasing it on another, are not material changes which alter the merits of the case. The seating capacity is identical; the changes are trifling, unimportant and unessential, and the board was without jurisdiction to entertain the application or to reverse its prior denial.

The rules of the board of standards and appeals provide that no appeal that has theretofore been denied after a public hearing, unless based upon a new decision of the superintendent of buildings on plans which materially change the aspect of the case, can be entertained under the same state of facts. This was another reason for denying the application when brought anew before the board.

Nor do we consider on the merits that the board had power to vary the application of the use district regulations under section 7, subdivision c, of the Building Zone Resolution, since there was no

evidence of practical difficulties or unnecessary hardships, and no evidence of any unusual condition or emergency warranting such variation.

Permission under section 7, subdivision c, is for an extension of an existing or proposed building into a more restricted district under such conditions as will safeguard the character of the more restricted district. The board cannot proceed except as the Building Zone Resolution indicates in section 7, " in appropriate cases," after public notice and hearing, and subject to proper conditions and safeguards. There must be also common ownership, and there must be harmony with the general purpose of the Building Zone Resolution.

We conclude that there must also be evidence, to make a case " appropriate," to show that there were practical difficulties or unnecessary hardships in the manner of carrying out the provisions of the Building Zone Resolution. Besides, we have held that the decision must be predicated upon considerations of the public health, safety and general welfare. Nothing in this case shows that the board made its decision in conformity with any of these requirements. The power of the board of standards and appeals is confined to variations in special cases to meet some unusual emergency or some unnecessary hardship. (*People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280.) Whether the property under consideration is more suitable for a prohibited use than a permitted one is immaterial. (*Matter of Stillman* v. *Board of Standards & Appeals*, 222 App. Div. 19; affd., 247 N. Y. 599.)

We conclude, therefore, that it was error for the court at Special Term to quash the petition and order herein and to sustain the determination of the board of standards and appeals. For those reasons, the order of the Special Term should be reversed, with ten dollars costs and disbursements; the determination of the board of standards and appeals annulled; and the order of certiorari sustained, with fifty dollars costs against the intervenor, respondent.

FINCH, J., concurs.

Order affirmed, with ten dollars costs and disbursements to the respondents against the appellants.