The People of the State of New York ex rel. Fordham Manor Reformed Church et al., Appellants, *v.* William E. Walsh et al., Constituting the Board of Appeals of the City of New York, Respondents.

Samuel Marker, Intervenor, Respondent.

New York city — Zoning Ordinance — certiorari — review of decision of board of appeals permitting departure from zoning map on ground of unnecessary hardship — return on certiorari must show reasons for finding of hardship — existence of garage in same portion of street in residence district insufficient, in itself, for permission to erect another next door.

1. Section 719-a of the charter of the city of New York (L. 1916, ch. 503, § 6) providing for review by certiorari of a decision of the board of appeals, requires that the return to the writ "must concisely set forth such facts as may be pertinent and material to show the grounds of the decision."

2. Where, therefore, upon the petition of a property owner for variation of zoning regulations so as to permit erection of a garage in a residence district, his right to relief, if it exists at all, must have its foundation in section 21 of the Zoning Resolution whereby the board of appeals is invested with dispensing power "where there are practical difficulties, or unnecessary hardships" in the way of carrying out the strict letter of the law and, obviously, there are no practical difficulties, so that the inquiry is reduced to whether there is any support for a finding of unnecessary hardship, reasons assigned for granting the relief, in a return to a writ of certiorari to review the decision of the board, which amount to nothing more than that a garage may be built because there is another one next door, are insufficient to supply a basis for a departure from the zoning map.

Under the Zoning Ordinance a garage already existing in the same portion of the street is not a sufficient reason, in and of itself, for the allowance of another in a district set apart for residences. There must be a showing of " unnecessary hardship " and if such hardship exists the reasons therefor should appear from the return. A review by certiorari becomes impossible if without supporting evidence or allegations in the answer equivalent to evidence the mere conclusion of hardship is sufficient and decisive. (*People ex rel. Werner* v. *Walsh*, 240 N. Y. 689; *People ex rel. Faccy* v. *Leo*, 230 N. Y. 602, distinguished.)

*Matter of Fordham Manor Reformed Church* v. *Walsh*, 217 App. Div. 177, reversed.

(Argued January 10, 1927; decided February 23, 1927.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 4, 1926, which reversed an order of Special Term annulling a determination of the board of appeals of the city of New York and confirmed said determination.

*Abel E. Blackmar* and *John N. Regan* for appellants. The power conferred upon the board of standards and appeals by section 21 of the Zoning Resolution is judicial and not administrative. (*People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; *People ex rel. Steward* v. *Railroad Commissioners*, 160 N. Y. 202; *People ex rel. Loughran* v. *Railroad Commissioners*, 158 N. Y. 421.) Certiorari lies to review the decision of the board in finding that there are practical difficulties or unnecessary hardships and also in determining that the variance of the provisions of the resolution is in harmony with its general purpose and intent. (*Matter of Goldenberg* v. *Walsh*, 215 App. Div. 396; 242 N. Y. 576; *People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; 240 N. Y. 659.) The return and the record before the board were not sufficient to justify a finding of practical difficulties or unnecessary hardships. (N. Y. Charter, § 719-a, subd. 3; L. 1916, ch. 503, § 6.)

*George P. Nicholson*, Corporation Counsel (*John F. O'Brien*, *J. Joseph Lilly* and *William T. Kennedy* of

**282** People ex rel. Fordham M. R. Church *v.* Walsh.

[244 N. Y. 280]　　　Opinion, per Cardozo, Ch. J.　　　　[Feb.,

counsel), for Board of Appeals, respondent. If there are any facts tending to support the determination of the board in relation to the existence of a hardship, then its action is not arbitrary and it will be sustained. Courts will not substitute their judgment for that of the board. (*People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; 240 N. Y. 689; *Matter of Goldenberg* v. *Walsh*, 215 App. Div. 396; 242 N. Y. 576; *Matter of Boyd* v. *Walsh*, 217 App. Div. 461; *People ex rel. N. Y. & Q. Co. Gas Co.* v. *McCall*, 219 N. Y. 84; 245 U. S. 345; *City of Rochester* v. *R. G. & El. Co.*, 233 N. Y. 39; *People ex rel. Penn. Gas Co.* v. *Pub. Serv. Com.*, 211 App. Div. 253; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *People ex rel. Moriarty* v. *Creelman*, 206 N. Y. 92.) The board's determination is supported by the facts. (*People ex rel. Facey.* v. *Leo*, 230 N. Y. 602; *People ex rel. Smith* v. *Walsh*, 240 N. Y. 607.)

*Monroe Goldwater* and *Nathan B. Kuklin* for intervenor, respondent. A real hardship would be imposed upon the property of the intervenor, respondent, by the denial of his application. (*People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; 240 N. Y. 689.) The determination of the board of appeals should not be interfered with in the absence of the sure exercise of discrimination or the gross abuse of discretion. (*People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; 240 N. Y. 689; *Multiplex Garages, Inc.*, v. *Walsh*, 213 App. Div. 155; *Matter of Goldenberg* v. *Walsh*, 215 App. Div. 396; *People ex rel. Boyd* v. *Walsh*, 210 N. Y. Supp. 46.)

Cardozo, Ch. J. The city of New York has been divided by its Board of Estimate and Apportionment into zones or districts of three classes: residence districts, business districts, and unrestricted districts (Ordinances New York City, Zoning Resolution, §§ 2, 3, 4, 5). In residence districts, buildings may be used for dwellings,

clubs, churches, schools, hospitals, railroad passenger stations, and a few other kindred purposes. In business districts, enumerated forms of trade and industry, forty-five in number, are prohibited. Garages for more than five motor vehicles are among the buildings barred. In unrestricted districts, there are no restraints upon use.

The Board of Appeals, after public notice and hearing, may permit in a business district the erection of a garage " in any portion of a street between two intersecting streets in which portion there exists a garage for more than five motor vehicles * * * which existed on July 25, 1916," (Zoning Resolution, § 7, subd. e). No provision is made for a like variation in residence districts. The Board may also permit the erection of a garage in either a business or a residence district if " the petitioner files the consents duly acknowledged of the owners of 80 per cent. of the frontage deemed by the Board to be immediately affected by the proposed garage," (§ 7, g). Finally, " where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution, the Board of Appeals shall have power in a specific case to vary any such provision in harmony with its general purpose and intent, so that the public health, safety and general welfare may be secured and substantial justice done," (Zoning Resolution, § 21; cf. Greater New York Charter, § 242-b).

One Samuel Marer was the owner in May, 1925, of a plot of land, 150 feet in width, fronting on the west side of Aqueduct avenue, between Kingsbridge road and One Hundred and Ninety-second street in the borough of The Bronx. He owned also at this time a plot to the north, extending to Kingsbridge road, about 86 feet in width. Kingsbridge road, together with a strip of land 100 feet along it, is in a business district. Aqueduct avenue except for this strip of 100 feet is in a residence district. Marer wished to build a garage upon the

southerly 150 feet of his total plottage, but the zoning law forbade. The greater part of the 150 feet was in a district classified as residence. His plans being rejected by the superintendent of buildings, he petitioned the Board of Appeals to vary the zoning regulations in his case. He could not bring himself within Zoning Resolution, section 7-e. There was, it is true, another garage on the same block, immediately to the south, a garage erected before July 25, 1916, when the zoning law took effect. The presence of such a garage, without more, permits the Board in its discretion to authorize a new garage in a business district. It has no such effect in a residence district. He could not bring himself within section 7-b, which prescribes the powers of the Board " where a use district boundary line divides a lot in a single ownership." "A use authorized on either portion of such lot " may then be extended " to the entire lot, but not more than 25 feet beyond the boundary line of the district in which such use is authorized." Besides, there is nothing to show that the northerly 14 feet of the land to be used for the proposed garage could not have been combined in some appropriate use with the 86 feet, vacant and in the same ownership, extending to Kingsbridge road. He could not bring himself within section 7-g, for he did not file the consents of the owners of 80 per cent of the frontage affected by the change. His right to relief, if it exists at all, must have its foundation in section 21, whereby the Board of Appeals is invested with dispensing power " where there are practical difficulties or unnecessary hardships " in the way of carrying out the strict letter of the law. Practical difficulties there obviously are none. The inquiry is thus reduced to this, whether there is any support for a finding of unnecessary hardship.

We have seen that the plot immediately adjoining to the south is already occupied by a garage. The existence of this garage was known presumably to the Board of Estimate and Apportionment when it adopted the zoning map.

None the less, it placed the street within the boundaries of a residence district. This was a manifestation of its will that the residence use should be maintained unless unnecessary hardship in individual or peculiar cases would otherwise result. The section is a growing one, as yet but sparsely settled. The use to be made of Marer's lot, with its frontage of 150 feet, will fix for years to come the quality of the street. Next to the old garage, on the south, there is a lot still vacant, 62½ feet wide. Its owner has appeared in this proceeding and protests against the change. Next is an apartment house. The owner of that lot consents. On the same side of Aqueduct avenue, but across One Hundred and Ninety-second street, is another apartment house. The owner of that lot protests. On the other side of Aqueduct avenue between Kingsbridge road and One Hundred and Ninety-second street is a strip of land belonging to the city of New York, laid out as a park. Many children play there. Its attractiveness as a playground will be impaired, at least in some degree, by the multiplication of garages. The next street to the east, Grant avenue, also in a residence district, is occupied by dwellings. The rear windows of these dwellings look out across the strip of park upon the site of the proposed garage. Many of the owners protest against the change. The next street to the west, University avenue, also in a residence district, is occupied chiefly by dwellings, though there are some lots in use for business. The rear of the proposed garage will be contiguous to the rear of one of these dwellings, an apartment house. Its owner has not consented to a variation of the use.

Upon a record made up for the most part of informal colloquy with counsel, the Board granted the petition, one member dissenting. Owners of near-by property conceiving themselves aggrieved sued out a writ of certiorari under Greater New York charter, section 719-a. By the terms of the statute, the return is to contain a

copy of any papers acted upon by the Board, and " must concisely set forth such other facts as may be pertinent and material to show the grounds of the decision." The court may take evidence either through a referee or otherwise, "if, upon the hearing, it shall appear   *   *   * that testimony is necessary for the proper disposition of the matter " (cf. *People ex rel. Manhattan R. Co.* v. *Barker*, 152 N. Y. 417, 430, 431). The return to this writ annexes a copy of the proceedings at the hearing, and states the following reasons for the action of the Board:

" (1) There is an existing one-story garage immediately adjoining the proposed garage which has a frontage on Aqueduct Avenue of 67 feet 5 inches and runs through the entire block from Aqueduct Avenue to University Avenue as shown on the blue print plan. The existence of said garage which accommodates approximately 180 cars is sufficient justification to permit another garage next door. This is precisely what the Board has done by its decision herein.

" (2) The Board of Appeals is of the opinion that a real hardship would be imposed on the owner of said property if prevented from using it for garage purposes.

" (3) The public health, safety and general welfare is secured and substantial justice done to all the parties interested by the decision of the Board of Appeals in view of the character of the neighborhood and the existing garage next door. No hardship or injustice is imposed upon the objecting property owners.

" (4) The plot of ground on which it is proposed to erect said garage has a frontage on Aqueduct Avenue of 150 feet by a depth of 109 feet 3 inches, located about 86 feet southerly from Kingsbridge Road. Rigid conditions have been imposed, and said proposed garage is limited to one-story in height."

We think the reasons assigned are insufficient to supply a basis for a departure from the map. They amount to nothing more than this, that a garage may be built

People ex rel. Fordham M. R. Church *v.* Walsh.    **287**

1927.]        Opinion, per Cardozo, Ch. J.        [244 N. Y. 280]

because there is another one next door.   A garage already existing in the same portion of the street is a sufficient ground under section 7-e for the allowance of a new garage in a district set apart for business.   It is not a sufficient reason in and of itself in a district set apart for residences. There must then be a showing of something more, a showing of " unnecessary hardship."   If such hardship exists, the reasons for its existence should appear from the return. Only thus can a court know whether they are substantial or illusory.   The reasons may be made to appear in one or other of two ways.   The hardship may be found as an inference from evidence submitted at a hearing.   Dealers in real estate or other qualified experts may show, for illustration, that the land cannot yield a fair income if occupied as a dwelling.   The discrepancy, even if not decisive in all cases, would be highly significant in many. At all events, when there is evidence in the record, whatever inferences therefrom are proper will be presumed, n aid of the dispensing resolution, to have been drawn by the Board.   The statements of the witnesses do not have to comply with the technical requirements applicable to testimony in court.   They are not even under oath. It is enough that reasonable men could view them as entitled to probative°effect.   But the power of the Board to do justice informally and promptly is not limited to cases where witnesses have been heard.   Without any witnesses at all, it may act of its own knowledge, for, as constituted by the statute (Greater New York charter, § 718), it is made up of men with special qualifications of training and experience.   In that event, however, it must set forth in its return the facts known to its members, but not otherwise disclosed.   To characterize the situation as a hardship without more does not tend in any substantial degree to enlighten a reviewing court.   There must be disclosure of the facts from which hardship is inferred.

.  We find neither evidence at the hearing, nor any

**288** People ex rel. Fordham M. R. Church *v.* Walsh.

[244 N. Y. 280]     Opinion, per Cardozo, Ch. J. ·          [Feb.,

statement, equivalent to evidence, by the Board in its return, that this land, if not occupied by a garage, is incapable of application to a profitable use. The omission leaves the permit unsupported by the proofs. The court is not informed as a matter of judicial notice that land cannot profitably be improved by an apartment house in sections of modest or humble quality for the mere reason that next door there is a garage a single story high. One of the members of the Board stated at the hearing that such a garage, far from decreasing the fitness of the site, has a substantial tendency to increase it by assuring light and air. If he was in error, there was no one who ventured to contradict him at the time. The disadvantage, if any, of the neighboring garage was offset to some extent, as was pointed out at the same time, by the pleasing prospect assured to dwellers in such an apartment house by the strip of park in front. The Board or a majority of its members may have known, aside from any evidence submitted by the owner or his witnesses, that the effect of a garage is to destroy the value of adjoining dwellings in districts of modest homes as in those of wealth and fashion. If that is so, there has been a failure to disclose the knowledge, or the facts that would lead to knowledge, in the answer to the writ. A pronouncement so sweeping might have far-reaching effects upon the development of residence districts in other sections of the city. We cannot read it into the answer as the result of doubtful inference. Presumably this owner, who acquired the parcels with notice of the zoning resolution, paid a consideration appropriate to the limitation of the use. There is no element of the unexpected or the incalculable to aggravate his plight. So far as the record shows, the mere presence of another garage upon the lot immediately adjoining has been made the excuse, without other explanation of the hardship, for changing the quality of the street and nullifying the map.

We say the quality of the street is changed, and so

indubitably it is. Beside the old garage, 67½ feet wide, there is to be a new one even wider. Out of a total block frontage of about 518 feet, 217½ feet will be devoted hereafter to a prohibited use. No one can doubt that Aqueduct avenue at this point will be taken out of the residence district as effectively as if the old map had been withdrawn and another with a new contour established in its stead. The power to change the map is reserved by the charter to the Board of Estimate and Apportionment. The power of the Board of Appeals is confined to variations in special cases to meet some unusual emergency, some unnecessary hardship. The consequences at times may not be greatly different. All the more obvious is the need that the nature of the hardship and the reasons for declaring its existence be disclosed with reasonable certainty. Disclosure may come, as we have already pointed out, from the evidence at the hearing. It may come, when such evidence is lacking, from the allegations of the answer, which must then take such a form as to be equivalent to evidence. In the absence of one basis or the other, the resolution may not stand.

Previous decisions of this court have conceded a wide scope to the discretion of the Board. We have no thought to retract or qualify them by anything now said. At times the Board has declined to permit a departure from the map. The situation must be rare indeed where the concession of such a privilege can be demanded as of right. A typical case is *People ex rel. Werner* v. *Walsh* (240 N. Y. 689). The owner whose petition had been denied, complained that he was the victim of arbitrary discrimination in that other applications had been granted at the instance of neighboring owners not differently situated. We found a basis in the record for the exercise of judgment. Not improbably the Board had made a mistake in granting like favors to other owners in the past. This did not mean that it was subject to a legal duty to enlarge the field of encroachment and thereby

19

**290** People ex rel. Fordham M. R. Church *v.* Walsh.

[244 N. Y. 280]     Opinion, per Cardozo, Ch. J.     [Feb.,

magnify the error. The question was not " whether some one else " had " been favored." The question was " whether the petitioner " had " been illegally oppressed " (*Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330, 336). We have had to deal with other cases where permits have been granted. Typical of these is *People ex rel. Facey* v. *Leo* (230 N. Y. 602). A lot in a residence district was already occupied by a stable. All that was asked was to turn the stable into a garage (Zoning Resolution, § 7-a). The barns and power house of a street railway were on the other side of the street. There were also two garages. Witnesses deposed that sleep was made difficult by the noise of the power house. Witnesses deposed also that the land could not be used with reasonable profit except for a garage or stable. The evidence filled the gaps that have been left uncovered here.

We thwart the scheme of the statute if we uphold a resolution for the concession of a privilege with neither evidence at the hearing, nor allegations in the answer to be accepted as a substitute for evidence. The Legislature has said that there shall be review by certiorari (Greater New York charter, § 719-a). Such review becomes impossible if without supporting evidence or equivalent averment the mere conclusion of hardship is sufficient and indeed decisive. There has been confided to the Board a delicate jurisdiction and one easily abused. Upon a showing of unnecessary hardship, general rules are suspended for the benefit of individual owners, and special privileges established. Nothing is before us to justify or even suggest a doubt of the good faith and sincerity with which the power has been exercised. At the same time judicial review would be reduced to an empty form if the requirement were relaxed that in the return of the proceedings the hardship and its occasion must be exhibited fully and at large. Safeguards of this order have at times an aspect of triviality when our scrutiny is narrowed to one instance or another. Their

value is perceived when the outlook is extended to something wider than particulars. Disclosure is the antidote to partiality and favor.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, without prejudice to the renewal of the application to the Board, and without costs to either party (Greater New York charter, § 719-a, subd. 5).

POUND, CRANE, ANDREWS, LEHMAN and KELLOGG, JJ., concur.

Ordered accordingly.