# BALTIMORE CITY COURT.

Filed October 16, 1928.

THE CONVENTION OF THE PROTESTANT EPISCOPAL C H U R C H OF THE DIOCESE OF MARYLAND, A BODY CORPORATE, ET AL.,

VS.

THE MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.

*Henry D. Harlan, Edward Guest Gibson, Harry N. Baetjer* and *Charles F. Harley* for plaintiffs.

*Isaac Lobe Straus, William Pinkney Whyte, Jr., Irving C. Goldstein* and *A. Walter Kraus* for defendant.

STANTON, J.—

This is an appeal from the action of the Board of Zoning Appeals in granting a permit to the Greenway Apartment Company to erect an apartment house containing one hundred apartments in an "F" area as laid down on the zoning map. The Zoning Ordinance provides that in an "F" area, not more than six families to the acre shall be lawful. The case is heard de novo, and calls for a finding of fact, as well as the construction of that section of the law which defines the powers of the Board of Zoning Appeals under Art. 49, Sec. 22, Par. (f) of the Baltimore City Code.

The ordinance and the zoning maps which are part thereof, were offered in evidence and are before the Court.

An inspection of the zoning map of the city upon which the zoning districts are outlined taken in connection with the provisions of the zoning ordinance of which the map is made a part, shows with certainty that the locus in question is in "F" area. The testimony of Mr. Marshall, the Chairman of the Zoning Board, and Mr. Grinnalds, its secretary, is to this effect, and theirs is the only evidence in the case bearing on that point. The argument is made that because the zoning maps, except where district lines are in the center of the streets, only follow fixed and definite lines in certain conditions referred to in the evidence — such as natural streams, or beds of railroads — for these reasons the lines of the area districts are subject to the arbitrary judgment of the Board of Zoning Appeals, and therefore the ordinance, insofar as it attempts to designate area districts, is invalid. But this ordinance, as to its area provisions, has been passed upon by the Court of Appeals and has been declared to be valid. R. B. Construction Co. vs. Jackson, 152 Md. 671. Mr. Marshall and Mr. Grinnalds testify further that taking the language of the zoning ordinance and

the map together, the lines are fixed and determinable from the map itself. In this case such is found as a fact.

It must have been so regarded by the Greenway Apartment Company when it made application for relief from the restrictions of "F" area before it took title to the lots in question, by the introduction of an ordinance before the City Council of Baltimore. When this ordinance was introduced it was referred to the Board of Zoning Appeals for consideration and report. The Board of Zoning Appeals recommended its passage, suggesting certain modifications, but the City Council refused to pass it, and voted it down.

When application was made to the Building Engineer for a permit to build an apartment house on these two lots, according to certain plans submitted with the application which called for one hundred apartments, the application designated the lots as being in "F" area. The permit was refused, and an appeal made to the Board of Zoning Appeals to modify the restrictions of "F" area, so as to permit an apartment house of the character shown by the plans, and containing one hundred apartments. Under the zoning ordinance, an apartment house can be built on the lots, but only with six families to the acre.

The City Council, by ordinance, granted permission to build an apartment house with forty-five families on the northernmost line of the city block in which the two lots in question are situate. And another apartment house was built to provide for ninety families on another lot fourteen hundred feet north from the two lots in question. The owners of these two buildings applied for legislative action at the hands of the City Council, and were successful; but the Greenway Apartment Company could not get permission from the City Council, and as has been said, it then sought modification of the area restrictions from the Board of Zoning Appeals.

The power invoked by the Board of Zoning Appeals is under the following provisions of the law—Baltimore City Code, Art. 49, Sec. 22, Par. (f).

* * * "Where there are *practical difficulties* or *unnecessary hardship* in the way of carrying out the strict let-ter of this Article, and the maps which are a part hereof, the Board of Zoning Appeals shall, with the concurring vote of five members, have the power in passing upon appeals, to vary or modify any of the regulations or provisions of this article, relating to the use, construction or alteration of buildings or structures, or the use of land, so that the spirit of the article shall be observed, public safety and welfare secured and substantial justice done. The rule that the Board of Zoning Appeals shall follow in deciding the various questions referred to in this article shall be the protection of living conditions as far as reasonable or the prevention of serious injury to the appropriate use of neighboring property."

The question arises—Has the Board of Zoning Appeals the power to set aside the restriction on the number of families to the acre in "F" area. Making use of whatever assistance comes from contemporaneous construction, it is significant that no such power was claimed by the Board of Zoning Appeals when the City Council referred to that Board for consideration and report the ordinance granting the right to the Greenway Apartment Company to erect the apartment house on these lots. And in the record of its proceedings of this application, it appears to have been recognized by the Board that to grant the modification requested would be "a radical departure from, and a stretching of the law." The justification for the action of the Board among other considerations, is founded on the action of the City Council in passing two ordinances for apartment houses in "F" area in this locality, and permitting a greater number of families to the acre than is provided in the law, as well as other encroachments on the zoning law.

The decision of the Board of Zoning Appeals, which amounts to nothing more than an apartment house in excess of the family restrictions should be built on these lots because there is another one in the same block, or another fourteen hundred feet to the north, is insufficient to supply a basis for a departure from the zoning map. People, ex rel., etc., vs. Walsh, 244 N. Y. 280.

Another ground for justification was stated to be the fact that the spirit of

the law has been violated in these other instances referred to. But if it was a mistake to permit the erection of the other apartment houses in this area contrary to the restrictions of the zoning law, it is no reason to enlarge the field of encroachment and thereby magnify the error. The question is not whether someone else had been favored, but whether the Greenway Apartment Company has been illegally oppressed. Ibid, 244 N. Y. 289-290.

Can any injustice or illegal oppression be claimed when we recall that the restrictions have been outstanding for more than five years, and were known at the time the Greenway Apartment Company bought the lots. Presumably it bought the lots for the single purpose of building an apartment house, and that the company knew of the restriction is evidenced by its action in attempting to get legislative sanction to erect the apartment for a greater number of families than is allowed by law. But the contention is made that the locus in question is not adapted profitably to any other use than a commercial use, and that because the locality is and has been so distinctly an apartment house section, the action of the Board of Zoning Appeals is sound, reasonable and legal. For the most part, however, the apartment houses in this section of the city were built before the zoning ordinance was passed, and if density of population bears on the health, morals, safety and welfare of the community, the great number of apartment houses in this neighborhood may in itself have controlled in creating the restrictions for this locality. Whether that is true or not, it has been uniformly held in cases of this character that unless the applicant can establish practical difficulties or unnecessary hardship, there is no authority in the Board of Zoning Appeals to vary or modify the provisions of the law.

The property owner's desire (and particularly one who has purchased the land after the zoning law had been passed) to obtain more money through rentals by erecting an apartment house with a greater number of families to the acre than the zoning law permits, is of itself no evidence of practical difficulty and unnecessary hardship within Sec. 22, par. (f), so as to vary zoning regulations.

Stevens vs. Clark et al, 215 N. Y. Supp. 190; Prusik vs. Board of Appeals, etc., 160 N. E. Rep. 312; Stillman vs. Board of Appeals, etc., 247 N. Y. 599; Junges Appeal, 89 Penna. Superior Ct. Rep. 543; Wolfsohn vs. Burden, etc., 241 N. Y. 288.

It is also urged as another ground for justifying the issuance of the permit that the locus in question is in the most highly restricted area, while the southerly and westerly boundary lines separates it from an "A" area, which is the unrestricted portion of the zoning map. But this situation must exist in many other parts of the city, and removing the restrictions of one area because it bounds on another area less restricted would result in gradual encroachments until all restrictions could be swept away, without regard to practical difficulty or unnecessary hardship. The law would not be fixed and certain, and the whole zoning plan would be at the caprice of the Board of Zoning Appeals. The statute would thus be reduced to an instrument for personal or political favors, and any particular piece of property be selected for special exemption. Prescote vs. Pierce, 223 N. Y. Supp. 610.

When considering appeals from the Building Engineer in zoning proceedings, the power of the Board are quasi-judicial. The Board cannot substitute its judgment where changes in the law have been sought from the City Council, and the City Council has refused to pass the legislation and make the change requested. The power to vary or modify the strict letter of the law is illustrated in these cases of practical difficulty or unnecessary hardship in the application of the law, such as the side yard requirement where the lines of the lot are irregular or at an angle. (Krieger vs. Mayor and City Council, Circuit Court No. 2 of Baltimore city, 1925.)

The case of Nectow vs. City of Cambridge presents a different situation from the facts in this case, and cannot control. Advance Opinions, Sup. Ct. 1927-1928, 72 L. Ed. 520.

For the foregoing reasons the action of the Board of Zoning Appeals is reversed and annulled and the application for the permit is refused.