In the Matter of IRVING E. JETTER, Doing Business under the Name of NATIONAL OUTDOOR ADVERTISING COMPANY, Petitioner, against WALTER F. HOFHEINS et al., Constituting the Board of Zoning Appeals of the Town of Hamburg, Respondents.

Supreme Court, Special Term, Erie County, May 26, 1947.

*Thomas I. McElvein* for petitioner.

*Theodore A. Viehe* for respondents.

*Walter F. Hofheins,* respondent in person.

VANDERMEULEN, J. Petitioner in this proceeding is engaged in the advertising business and in such business he erects and maintains painted and electric advertising displays. In 1929 the petitioner acquired from one Arthur Hoover the exclusive right and privilege to erect and maintain advertising signboards and displays upon premises on the westerly side of the Lakeshore Road near the circle at Big Tree Road in the town of Hamburg; said right and privilege was for a term of one year with the option of renewing from year to year. Pursuant to said agreement, a billboard was erected on the premises in the year 1929, and was maintained continuously.

A similar right and privilege was acquired from the Stony Land Company involving certain premises situated on the easterly side of the Lake Shore highway south of Woodlawn and upon which was erected a billboard in 1929.

On or about June 12, 1933, the Town Board of the Town of Hamburg, New York, adopted a resolution known as " The Building Zone Ordinance of the Town of Hamburg "; said Building Zone Ordinance was duly revised on September 1, 1938. The ordinance as originally approved and as revised regulates and limits, among other things, commercial billboards, signboards and advertising signs, and for that purpose and others establishes the boundaries of districts, and by said ordinance, the districts which embrace the premises afore-mentioned were each respectively designated as " Industrial District " and " Business District."

In the month of May, 1945, both advertising display signs maintained by the petitioner on the premises above described were blown down by a wind storm. The petitioner was advised by letter, dated May 25, 1945, from John C. Murjahn, Building Zone Inspector of the Town of Hamburg, that a permit would be required to rebuild said signs.

Thereafter and on or about the 2d day of May, 1946, petitioner duly filed with the Town Board of Hamburg, New York, applications, accompanied by the required fee, for permits to re-erect and repair the advertising display signs. On or about the 18th day of May, 1946, the application for each permit was denied by the Building Zone Inspector of the town.

Thereafter and on or about the 25th day of June, 1946, petitioner by his attorneys, Davis, Townsend, McElvein and Potter, duly filed an appeal from the determination of the inspector, with the Board of Zoning Appeals of the Town of Hamburg, upon the grounds: First, that appellant's use existed prior to and at the time of the passage of the zoning ordinance of the Town of Hamburg, New York; second, that the denial deprives the petitioner of his property without due process of law, and, third, that the denial causes the petitioner peculiar hardship. On the 7th day of October, 1946, after due notice of adjournment, the appeal came on for hearing before the Board of Zoning Appeals, which board affirmed the decision of the Building Zone Inspector and denied the petitioner's application.

Petitioner states in his petition that a review of the determination of the Board of Zoning Appeals is sought pursuant to section 282 of the Town Law. That section does not apply to the circumstances in this matter, but section 267 does. However, inasmuch as the papers in these proceedings follow closely the proceeding under section 267, this court will assume that the matter is brought under the latter section, and under article 78 of the Civil Practice Act. The petitioner seeks a correction

on the merits to the effect that the decision and determination of the Board of Zoning Appeals as to both signs be revised, annulled and set aside.

The sections and parts of sections of the Building Zone Ordinance involved in this controversy are 1, subdivisions (A) and (Y), 2, 3, 48, 48-a, 57-a, 57-b and 82. It is unnecessary to state the wording of all those sections except the following:

"Section 1. (A). Words in this ordinance are defined for the purpose thereof as follows: Words used in the present tense include the future; the singular numbers include the plural, and the plural the singular; the word 'lot' includes the word 'plot'; the word 'building' includes the word 'structure' and the word 'dwelling'; the word 'structure' shall include but not be limited to the words 'sign', 'billboard', 'signboard', 'portable building', and 'portable chicken house'; the word 'shall' is always mandatory."

"Section 82. *Non-conforming Uses.* The lawful use of a building existing on the effective date of this Ordinance, or authorized by a building permit issued prior thereto, may be continued, although such use does not conform with the provisions of this Ordinance, and such use may be extended throughout the building lawfully acquired previous to the said date. A non-conforming use of a building may be changed to a use of the same or higher classification according to the provisions of this Ordinance. Whenever a district shall hereafter be changed, any then existing non-conforming use of a building in such changed district may be continued or changed to a use of a similar or higher classification, provided all other regulations governing the new use are complied with. Whenever a non-conforming use of a building has been discontinued or changed to a higher classification or to a conforming use, such use shall not thereafter be changed to a use of a lower classification. No building which has been damaged by fire or other causes to the extent of more than seventy-five per cent (75%) of its value shall be repaired or rebuilt except in conformity with the regulations of this Ordinance."

The return of the respondents states that the members of the Board of Zoning Appeals had personal knowledge of the signs involved in both proceedings; that they had seen them on numerous occasions and from their knowledge of the destruction of the signs agreed and determined that they were demolished to an extent of more than 75% of their value.

At the hearing before the Board of Zoning Appeals on October 7, 1946, no proof was offered by either party concerning

the destruction and demolition of the signs to an extent of more than 75% of the value. Upon the hearing before this court Mr. Jetter testified fully concerning the manner of the construction and make-up of these signs and the manner of repairing and the cost of rehabilitation. In substance he stated that the cost of each sign would be about $389.44. He further testified that the total loss in value of each sign was approximately $125. According to this testimony, each sign was destroyed to the extent of approximately 35% of its value.

As to the financial value of the sign and the percentage of the value of each sign destroyed as bearing upon the clause " No building which has been damaged by fire or other causes to the extent of more than seventy-five per cent (75%) of its value shall be repaired or rebuilt except in conformity with the regulations of this Ordinance ", no evidence was presented by the respondents to this court. Since in section 2 of the Zone Ordinance petitioner has the right to rebuild unless the exception contained in section 82 is applicable, the burden would be upon the respondents to establish its applicability. (See *Rowell* v. *Janvrin,* 151 N. Y. 60.)

The respondents appear to construe this hereinbefore mentioned clause as meaning physical value. Value means worth. If the drafters meant anything but the financial worth of the sign, the statute could easily have been drawn accordingly by using the words " seventy-five per cent (75%) physically destroyed ". Even if this court were to construe this clause as meaning other than financial worth, there is a grave doubt from the photographs and in the absence of detailed proof that there was a physical destruction to the extent of 75%. In the case of *Matter of Koeber* v. *Bedell* (254 App. Div. 584, affd. 280 N. Y. 692) the matter was decided on evidence of facts concerning cost of reconstruction and repair.

The respondents claim that this court cannot pass upon the question as to whether there was any competent proof of the facts necessary to authorize the determination and cites *Matter of Board of Education* v. *Cole* (176 Misc. 509). Section 1296 of the Civil Practice Act provides that where the determination under review was made as the result of a hearing held, and at which evidence was taken, pursuant to statutory direction, the question as to the existence of such competent proof is one of the questions to be determined. The respondents place the stress upon the words " at which evidence was taken," whereas it belongs upon the words " pursuant to statutory direction ". The hearing in the *Cole* case (*supra*) was not a hearing pur-

suant to statutory direction but resulted in an administrative decision rather than a judicial one. To give the Civil Practice Act provision and the case cited the meaning attributed to them by the respondents would enable a board required by law to hold a hearing to avoid a review by the simple expedient of refusing to receive any evidence. In addition, section 267 of the Town Law expressly authorizes the court at a Special Term to take evidence upon the issues so that the proceeding is more analogous to a tax certiorari than to the common-law proceeding. (See *People ex rel. Hudson-Harlem Co.* v. *Walker*, 282 N. Y. 400, 406.) It seems clear that the two statutes read together, the Civil Practice Act and the Town Law, authorize the court to determine whether the facts, as disclosed by the evidence taken at Special Term together with what is disclosed by the return, authorize the determination made by the board.

In *People ex rel. Fordham M. R. Church* v. *Walsh* (244 N. Y. 280, 287) is the following: " At all events, when there is evidence in the record, whatever inferences therefrom are proper will be presumed, in aid of the dispensing resolution, to have been drawn by the Board. The statements of the witnesses do not have to comply with the technical requirements applicable to testimony in court. They are not even under oath. It is enough that reasonable men could view them as entitled to probative effect. But the power of the Board to do justice informally and promptly is not limited to cases where witnesses have been heard. Without any witnesses at all, it may act of its own knowledge, for, as constituted by the statute (Greater New York charter, § 718), it is made up of men with special qualifications of training and experience. In that event, however, it must set forth in its return the facts known to its members, but not otherwise disclosed. To characterize the situation as a hardship without more does not tend in any substantial degree to enlighten a reviewing court. There must be disclosure of the facts from which hardship is inferred."

Again, at page 290, the court said: " We thwart the scheme of the statute if we uphold a resolution for the concession of a privilege with neither evidence at the hearing, nor allegations in the answer to be accepted as a substitute for evidence. The Legislature has said that there shall be review by certiorari (Greater New York charter, § 719-a). Such review becomes impossible if without supporting evidence of equivalent averment the mere conclusion of hardship is sufficient and indeed decisive."

The return of the respondents contains no disclosure of facts from which a destruction of 75% of the value of the signboards was shown. It contains an affidavit of the Chairman of the Board, Mr. Walter Hofheins, in which is stated in substance that he and the members of the board had seen the signs on numerous occasions; that they had driven past the signs, observed them, and from such observation and knowledge, determined and agreed that the signs were demolished to the extent of 75% of their value. At the hearing before this court, Mr. Hofheins practically reiterated what he had stated in his affidavit contained in the return. This is not sufficient to justify this court in upholding the contention of the respondents as against the evidence adduced by the petitioner at the hearing.

Counsel for the respondents cites *Matter of Rubel Corp.* v. *Murdock* (255 App. Div. 224, affd. 280 N. Y. 839) in which the court stated at page 225: "The hearing before the board disclosed a conflict of fact on the issue of unnecessary hardship, the resolving of which against the petitioner may not be said to have been improvident. To hold otherwise would be to substitute a court's discretion for that of the board, to whom the statute has given the power to act. The petitioner had an adequate opportunity to adduce all its evidence on the hearing before the board, and the appointment of a referee in effect to try the issue of ' unnecessary hardship ' *de novo* was not warranted in view of the opportunities available to the petitioner before the board. (*People ex rel. St. Albans-S. Corp.* v. *Connell,* 257 N. Y. 73, 81.) The situation was not one where a reference was needful to clarify the condition and to determine whether or not the board had acted arbitrarily and abused its discretion. The effect of the reference was to enable the referee to exercise his discretion in the place of the board upon evidence adduced before the referee, which evidence was not in that form offered to the board. Moreover, even on the showing before the referee there was presented a fair question of fact that would have warranted the board, if it had had that showing before it, in resolving that question of fact against the petitioner."

That case does not apply in the instant matter for the reason that no evidence was adduced by either party at the hearing before the Zoning Board.

I find and decide that neither of the billboards described in the petitions has been damaged to the extent of as much as 75% of its value and that the cost of repairing or rebuilding the same so as to restore them to their former condition is less than 75% of their value severally.

Section 61 of the Building Zone Ordinance provides: "Before any building or structure shall be constructed, enlarged, altered, or moved within the limits of the Town of Hamburg, outside of the incorporated Villages of Blasdell and Hamburg, an application for permission to do so, showing the location of and giving the information hereinafter required concerning the proposed building shall be approved by the Building Inspector and filed with the Town Clerk * * *.''

Inasmuch as there is nothing in the Building Zone Ordinance that requires a permit when a building is to be repaired, the decision of the Zoning Board of Appeals in affirming the action of the Building Inspector in refusing a permit to the petitioner is hereby affirmed.

Submit order containing a clause substantially as follows: "It is Ordered and Adjudged that neither of the billboards described in the petitions herein has been damaged to the extent of as much as seventy-five per cent (75%) of its value and that no permit is required to authorize the petitioner to repair or rebuild the same so as to restore them severally to their former condition.''