■ In the Matter of JACOB BLUMBERG et al., Appellants, against RALPH FERIOLA et al., Constituting the ZONING BOARD OF APPEALS OF THE CITY OF YONKERS, Respondents, and SILVER DISTRIBUTING CO. OF NEW YORK, INC., Intervenor-Respondent.— In a proceeding pursuant to article 78 of the Civil Practice Act to review a determination of the Zoning Board of Appeals of the City of Yonkers which granted the application of the respondent Silver Distributing Co. of N. Y., Inc., for a variance to extend a proposed supermarket, to be built on lots 1 to 4 of block 134, 21 feet into lot 5, the appeal is from an order dismissing the proceeding. Order reversed, without costs, and determination annulled, without costs. Prior to the enactment of the new zoning ordinance (City of Yonkers, N. Y., Zoning Ordinance of 1953) lots 1 to 8 of said block were in a "BA" district. By that new zoning ordinance, lots 1 to 4 remained in a "BA" district and lots 5 to 8 were placed in "A-1" district. A "BA"

district is a nonresidence district in which the permitted uses are general business and apartment houses of highest density. A supermarket is a permitted use in a "BA" district. An "A-1" district is a residence district in which elevator apartment houses of highest density are permitted. A supermarket is not a permitted use in an "A-1" district. Belved Realty Corporation, not a party to this proceeding, purchased lots 1 to 8 on or about April 11, 1958. The corporate respondent entered into a contract with Belved to purchase lots 1 to 8. In part, the contract was conditioned on the granting of applications for zoning changes or variances. If the changes of zone or variance were denied, Belved was to retain $1,500 for liquidated damages. The corporate respondent also entered into a contract to purchase lots 9 to 13, which were in an "A-1" district, from another party. The said respondent filed an application for a variance to permit the proposed supermarket to be built in part on lots 1 to 4 and to be extended 21 feet into lot 5. That application was granted. Simultaneously with the granting of the variance as to lot 5, or approximately so, the Board, in its original jurisdiction, granted a special exception to permit lots 6 to 13 to be used as a semipublic parking area as accessory to the proposed supermarket. Under the zoning ordinance, the special exception permit did not take effect until it was approved by a resolution of the Common Council (§ 10-C-10). Prior to the determination of the Special Term, the Common Council adopted a resolution disapproving the special exception as to the parking. The propriety of the resolution by the Common Council is not directly before us for review. The record does not disclose the price paid by Belved, the owner of lots 1 to 8, about six months before the application for the variance was made by the corporate respondent. Presumably, Belved acquired the lots with notice of the zoning resolution and paid a consideration appropriate to the limitation of the use (see, e.g., *People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280, 288). It is evident that the purchase price to be paid by the corporate respondent was fixed with knowledge that the value of lots 1 to 8, as then zoned, was considerably less than if the zoning changes and the variance would be granted. There was no element of the unexpected or the incalculable to aggravate the plight of Belved or of the corporate respondent. One who knowingly enters into a contract to purchase land for a prohibited use cannot thereafter have a variance in the use of premises on the ground of unnecessary hardship. (*Matter of Clark* v. *Board of Zoning Appeals*, 301 N. Y. 86; *Matter of Freitag* v. *March*, 280 App. Div. 934; *Matter of Holy Sepulchre Cemetery* v. *Board of Appeals*, 271 App. Div. 33, 41; *Matter of Bobrowski* v. *Feriola*, 2 A D 2d 708; *Matter of Village of Bronxville* v. *Francis*, 1 A D 2d 236, affd. 1 N Y 2d 839.) Wenzel, Acting P. J., Murphy, Ughetta, Hallinan and Kleinfeld, JJ., concur. [16 Misc 2d 1001.]