Burke, J. (dissenting).
We dissent and vote to reverse and remit to Special Term for a hearing. The Town Board has given neither evidence to support its reasons for denying the applications, nor have such reasons been shown to relate to the public health,- safety or welfare under the particular circumstances of this case.
The issue, as we see it, is not judicial interposition but whether the review of administrative determinations, espoused by the majority, is possible on the record presented to us. We think not.
The facts assigned by the town as those on which its determination was based do not lead to its conclusion, and further fail to furnish a reviewing court with evidence in the record justifying such result. While personal knowledge of the mem *27 bers of the Town Board is, of course, a permissible basis for a decision, a statement of facts upon which that knowledge is founded must be furnished, so that it may be appraised (People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280, 287; Matter of Holmes & Murphy v. Bush, 6 A D 2d 200, 203). There is none here.
Respondent, in its answer, first states that the premises are located at “ one of the most heavily trafficked intersections within the confines of the town ”. This is a totally conclusory statement, and unsupported by any facts, such as a traffic count. Special Term noted that the entire length of the turnpike is extremely busy, but that nevertheless, for instance, to the east, there is at least one other intersection, where stations occupy three corners, and many crossings with two such establishments. He further found, in the absence of evidence to the contrary, that this corner is no busier than others, and is controlled by a traffic light. He concluded that “ [t]here is no ground to suppose that the proposed use will add in any appreciable measure to the number of cars travelling on the Turnpike ”.
Secondly, the town pointed to a shopping center in the area and claimed that the addition of the gasoline station would endanger the safety of the shoppers. Appellant demonstrated by means of an exhibit—an aerial photograph of the area — that the location of the shops is such that there is very little traffic to them from the proposed location, and that the large parking area, where most of the traffic is centered, is behind the stores, a considerable distance from the subject premises. There are, of course, no facts in the town’s answer to indicate in what manner the gasoline station would interfere with shopping plaza traffic.
The town next alleges that there is a school in the same block as the shopping’ center. The school is not in the same block, but is three tenths of a mile north of the turnpike. The appellant contends that it is well known that the pupils do not walk on the same side of the street as the proposed station. Special Term made the following finding: “ The school referred to by the respondents is a considerable distance north of the petitioner’s property * * *. It is, in fact, in much closer proximity to a very large parking field of a shopping area of some magnitude. Hundreds of cars. enter and leave this park *28 ing area hourly. It is inconceivable that the proposed use would have any particular effect on the functioning of the school or the safety of its students ”.
Respondent also relies on the presence of a bus stop on the corner opposite the property. Special Term commented that “ [t]here is absolutely no evidence that the proximity to a bus stop would create an additional traffic hazard. Throughout the Town of Hempstead there are many locations where gasoline service stations and bus stops are permitted to exist near each other, but no proof has been offered that public safety has been adversely affected by such a pattern ”.
The existence of a gasoline station less than 400 feet away, on the opposite side of the street, is given as an additional reason. We cannot conclude, without an explanation, that this proposed station would be a hazard to the shopping center or school children, because the existing station is closer to both the center and the school than the proposed station. Special Term had this to say: “ The allegation that there is another gasoline station nearby is likewise without merit. This other station is not on the Hempstead Turnpike but is 400 feet north of the subject premises on the opposite side of Division Avenue. It is highly unlikely that any appreciable number of cars will turn off the Turnpike and drive north two hundred yards or more to patronize this existing station, which is convenient rather to the residential area to the north ’ ’.
Finally, the town concludes that “ the use of the subject premises is not in accord with the comprehensive plan of development of the Town of Hempstead ”. Apart from being merely a conclusory statement, it is contradicted, as we shall demonstrate below, by the very nature of a special exception use. The record, as it stands, suggests caprice.
The whimsical character of the reasons alleged by the town as the basis for its decision is appropriately emphasized when we consider the -town’s brief to the Appellate Division in the case of Matter of Rothstein v. County Operating Corp. (15 Misc 2d 340, affd. without opinion 6 A D 2d 711, affd. on entry G N Y 2d 728). There this same Toavu Board, having granted a special exception to a gasoline station, and arguing in favor of that issuance, made the following argument:
“What is the nature of the area surrounding the subject parcel? Atlantic Avenue is one of the heaviest traveled roads *29 in the Town of Hempstead. Both sides of Atlantic Avenue for several hundred feet to the east and west of the subject parcel are zoned ‘ Business ’ District to a depth of 100 feet.
“Directly opposite the subject parcel, on the north side of Atlantic Avenue, is an immense shopping center with parking facilities for hundreds of cars. On the southwesterly corner of the intersection of Kenneth Place and Atlantic Avenue, opposite the subject parcel, is a gasoline station. Under these circumstances, how can the [respondents] seriously advance the position that the permission of the Town Board to store gasoline and maintain a gasoline filling station on the subject parcel would unduly increase vehicular traffic and congestion with a subsequent danger to children and other pedestrians!
“ It is clear from the record in the Court below that the use of the subject parcel for a gasoline filling station is a logical use in keeping with the letter and spirit of the zoning powers of the Town of Hempstead.”
In its view, therefore, respondent assumes it may, without showing ‘ ‘ the manner in which such physical facts created a reasonable apprehension of danger or were otherwise justified by relation to the public health, safety, morals or general welfare ” (1 Rathkopf, Law of Zoning and Planning, ch. 54, p. 43, n. 16), reach an opposite determination, generating from the same reasons. We disagree.
As is common in modern zoning legislation, this legislative body has reserved for itself the administrative power to review and act on individual applications. Thereafter, in each case, the decision is administrative in nature, and reviewable in the same manner as any other (Matter of Rothstein v. County Operating Corp., supra; Matter of Green Point Sav. Bank v. Board of Zoning Appeals, 281 N. Y. 534).
It has been aptly said that “ an exercise of such discretion may be set aside (1) if discriminatory * * *; (2) if not ‘ pursued in the mode required by law ’ * * *; (3) if based solely upon grounds which, as a matter of law, may not be considered * * *; or (4) if arbitrary or unreasonable ” (.Matter of Bar TTarbour Chopping Center v. Andrews, 33 Misc 2d 894, 899-900).
The special exception sought by appellant is not a variance. “A special exception use differs from a variance in that a *30 variance is an authority extended to a property owner to use his property in a manner forbidden by the ordinance while a special exception allows him to put his property to a use which the ordinance expressly permits. * * * The inclusion of the particular use in the ordinance as one which is permitted under certain conditions, is equivalent to a legislative finding that the prescribed use is one which is in harmony with the other uses permitted in the district, and while a variance can be granted only with respect to particular property as to which practical difficulty and unnecessary hardship is found, the special exception permit must be granted to any and all property which meets the conditions specified”. (1 Rathkopf, Law of Zoning and Planning, ch. 54, pp. 3-5.)
Hence, when called upon by a challenge to a decision made in the case of a special exception, the town should be compelled to supply an answer containing those facts upon which it has based its conclusion. Such a return, to be other than a pretense, should enable the court reviewing the order to suitably pass on the reasonableness of the determination. Here the facts upon which the determination was made have not been shown to have a substantial relation to any criteria upon which the application could be refused. The return furnished by the Town Board, and approved by the majority, is nothing more than a stock set of phrases, designed to answer any petition. What the town has done is to list certain physical features of the area, and its conclusion that these landmarks mandate the denial of a permit. What is missing, of course, is the causal relation between them. Since the town has withheld evidence as to the causal relation between the physical features of the area and the landmarks, the courts cannot effectually review the action of the Town Board.
When, without discrimination, identical physical facts are permitted to serve as the basis for opposite conclusions, the court obviously has forsaken its function in these matters. This is tantamount to a return to a position, lately eschewed, that actions of a Town Board, in determining special exceptions, are legislative in nature, and not reviewable. (See Matter of Larkin Co. v. Schwab, 242 N. Y. 330.)
Presented with such a patently insufficient return, Special Term should have called a hearing so that the facts could be *31 determined, and their relationship, if any, to the decision examined. As Mr. Justice Beldock stated: “ These matters can he determined only after a hearing before the court, and not as a matter of law ”.
Judges Dye, Fuld, Froessel and Foster concur with Chief Judge Desmond ; Judge Burke dissents in an opinion in which Judge Van Voorhis concurs.
Order affirmed.