Gabrielli, J.
These are cross appeals from an order of the Appellate Division which modified a Special Term judgment confirming a determination of the Board of Standards and Appeals of the City of New York (Board) which (1) granted the intervenor-respondent (Solow) an extension of time within which to substantially complete the construction of a 500-seat *56 theatre and (2) also granted a special use permit for the construction of a second 500-seat theatre. The Appellate Division modification consisted of annulling the determination which authorized the construction of the second theatre. The extension of time granted to Solow related to the construction of a 45-story apartment building, to contain residential quarters and business establishments, including a 500-seat theatre in the basement of the building. Petitioner, the owner of substantial parcels in the immediate vicinity of the subject property, resists the grant of permission to construct any theatre.
The plot under review is situated on the west side of Second Avenue between East 66th and East 67th Streets in New York City with a frontage of 100 feet on the north side of East 66th Street and 300 feet on the south side of East 67th Street; and the portion fronting Second Avenue is located within a Cl-9 Zoning District in which movie theatres are not permitted except where a special permit is granted by the Board pursuant to the provisions of section 73-20 of the Zoning Resolution. This section provides that: “In Cl Districts, the Board may permit theaters with a capacity of not more than 500 persons, and may prescribe appropriate conditions and safeguards to minimize adverse effects on the character of nearby residential areas.” Section 73-11 of the Zoning Resolution provides that such special permits may be granted by the Board where the Board shall find that under the conditions and safeguards imposed, the hazards or disadvantages to the community at large through the location of such use at the particular site are outweighed by the advantages to be derived by the community by the grant of such special permit use.
On April 29, 1969, Solow applied to the Board for a special permit to install “ twin .theaters ” each with a capacity of 500 seats. At this time the plans provided for a waiting area within the building of approximately 2,300 square feet. In the fall of 1969, Solow revised his request to encompass one 500-seat theatre, and on December 16, 1969, the Board granted a special permit on the condition that there be no waiting lines on sidewalks and on the further condition that substantial construction be completed within one year. Because of delays caused by difficulty in arranging satisfactory removal efforts *57 regarding tenants in the existing building, the Board granted Solow until December 16,1971 to complete construction.
On January 26,1971, Solow applied to the Board for a second 500-seat theatre on his property. The architectural plans were revised from the original 1969 application to now provide for a depressed plaza waiting area of approximately 3,200 square feet. Following hearings commencing in March 1971, and after inspecting the property, the Board, by resolution dated May 4,1971, granted him a special permit for the additional theatre. On December 7, 1971, for exigent reasons Solow requested a further one-year extension to complete substantial construction, which was subsequently granted.
At the crux of this appeal is the exact nature of the physical structure to be erected. The majority at the Appellate Division described it as a “ single room served by two adjoining entrances and divided down its approximate center by a partition.” Our examination of the record does not support this view. Solow sought to erect a 45-story commercial and residential building along the entire width of Second Avenue between East 66th Street and East 67th Street which was designed to contain two separate 500-seat movie theatres in the second cellar of the building. The proposed seating areas of the theatres were to be installed at opposite ends of the block with their inner walls being 98 feet apart. Access to the theatres was by an entrance at street level, which opened to a depressed plaza (3,213 square feet in area and 5 feet below ground level), and' which contained separated avenues of ingress and egress, via a stairway and escalator to the individual theatres. A single ticket booth situated in the plaza was designed to serve both theatres. Each theatre had its own rest rooms and smaller lobbies at the foot of the stairs leading to the seating areas.
In resolving these issues we are required to construe the resolutions without giving the words a strained meaning, so as to effectuate the purposes sought to be accomplished by the enactments (see Matter of Westchester County S. P. C. A. v. Mengel, 292 N. Y. 121, 126). The statutorily stated intent inherent in the establishment of Cl districts is to maintain local retail shops catering to the day-to-day needs of nearby residents. Additionally, the obvious intendment of section *58 73-20 of the Zoning Resolution, permitting movie theatres on certain conditions, was to limit the inconvenience and obstruction to adjoining property owners and their invitees. In approving the grant of the special permit, the Board required that the scheduling of performances in the theatres be staggered; and it was further stipulated that there would be at least a 30-minute differential between showtimes in the respective theatres with different movies being shown at each theatre. Consequently, it seems highly unlikely that there ever would be 1,000 persons waiting at a single time. Moreover, the proof showed that the outdoor depressed area would accommodate as many as 1,000 waiting patrons.[1] This depressed plaza would be shielded from the street and neighboring properties by trees and shrubs and was to be covered by an overhead canopy.[2] In addition to this off-street entry arrangement there would also be separate exits from each of the theatres onto the side streets.
Our resolution of this case is aided by a comparison with a comparable situation where the theatres might be erected by separate individuals on contiguous lots, even with a single ticket booth. In fact, we find the situation under review preferable and more consonant with the purposes sought to be accomplished by the zoning ordinances. The staggering of showtimes and the separate exits onto parallel streets are luxuries not normally available to residents living in a neighborhood where there are two totally separated but contiguous theatres. We also take note of the persuasive argument advanced by the Board that the Zoning Resolution (§ 73-20) “ does not prohibit granting a special permit for more than one 500-seat theater on single zoning lot. There is no reason to distinguish two theaters on a large single zoning lot from two theaters on separate, adjoining lots.” Furthermore, “ the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld [citations] ” (Matter of Howard v. *59 Wyman, 28 N Y 2d 434, 438; see, also, Board v. Hearst Pub., 322 U. S. 111, 131; Rochester Tel. Corp. v. United States, 307 U. S. 125, 146). Accordingly, we hold that the grant of a special permit for an additional theatre did not violate the letter or spirit of the Zoning Resolution and did not constitute an abuse of discretion.
We find no merit to petitioner’s remaining arguments that (1) there was not substantial evidence to show that the community would derive advantages from the second theatre and (2) that the extension of the special permit for an additional year was invalid. In considering the first of these issues we need only determine whether there was substantial evidence in support of the Board’s determination. In doing so, of course, we may not substitute our judgment for that of the Board and we are required only to determine whether there has been illegality, arbitrariness, or an abuse of discretion (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 24; People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280; Matter of Reed v. Board of Stds. & Appeals, 255 N. Y. 126). Finding that the advantages to the community would offset any possible inconvenience to the neighborhood, the Board, after viewing the premises and surrounding area, and after numerous hearings over nearly three years, expressly concluded that there was a need to be fulfilled by the theatres, that the theatres would enhance property values in the area, and that they will benefit the commercial uses along Second Avenue and the economy of the city as a whole. In light of these express findings amply supported by the record, we find no arbitrariness in the Board’s determination of advantage, and likewise no illegality in its decision.
Lastly we find no abuse of discretion or illegality in the Board’s action in extending respondent’s time to complete construction or, in fact, in granting an application for an extension. It is not required that such an application be treated as a new application for which public notice and a hearing are mandatory. Although we hold that on such an application, the proceeding need not be treated de novo (cf. Ottinger v. Arenal Realty Co., 257 N. Y. 371; Matter of New York Life Ins. Co. v. Murdock, 8 A D 2d 191), we note that petitioner was afforded an opportunity to again appear and in fact was heard by the *60 Board. Section 73-70 of the Zoning Resolution provides that a special permit will ordinarily lapse upon the expiration of one year but there is otherwise no impediment to the grant of extensions prior to the expiration of one year. The record fully supports the Board’s exercise of discretion in this regard and in fact at one of the hearings petitioner’s counsel conceded that the delay in construction was not in anyway the result of respondent’s ineptness, but was caused by the inevitable delays in evicting former tenants.
Accordingly, the prder of the Appellate Division should be modified by reversing so much of the order of the Appellate Division which annulled the Board’s determination permitting a second 500-seat theatre, and, as so modified, it should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler and Rabin concur; Judge Stevens taking no part.
Order modified, without costs, in accordance with the opinion herein, and, as so modified, affirmed.

. Apparently this would be the first theatre in New York with a completely self-contained waiting area.

. In fact the Board resolution granting the special permit stipulated that there be no waiting lines on the sidewalk fronting the premises.